# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE

Jacob Gardner, et al.

Plaintiffs,

v.

Consolidated Nuclear Security, LLC,

Defendant.

Case No: 3:24-cv-00436-KAC-JEM

(JURY DEMANDED)

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO SEVER

---

### INTRODUCTION

Defendant Consolidated Nuclear Security, LLC ("CNS") asks this Court to turn one Fair Labor Standards Act ("FLSA") case into 19 separate cases. This will neither reduce jury confusion nor make the case more manageable, fair, and efficient. The Court should deny CNS's motion.

All of the Plaintiffs in this case worked for CNS at the same Oak Ridge, Tennessee location and under the same bargaining unit. They all allege that CNS violated the FLSA by failing to properly compensate them for donning, doffing, walking, waiting, and security-related work activities. In other words, they assert the same legal rights arising out of the same series of transactions and occurrences, and their claims raise the same questions of law and fact. They are all properly joined in this case under Federal Rule of Civil Procedure 20.

Importantly, Rule 20 joinder and the related concepts of severance and misjoinder under Rule 21 are not the same as whether employees are "similarly situated" for the purpose of an FLSA collective action under applicable Sixth Circuit precedent, *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023). Joinder, misjoinder, and severance are preliminary

1

considerations that are based on a more permissive standard than the "similarly situated" standard. This makes sense because, under *Clark*, a "similarly situated" determination comes later in the case and after merits discovery. Here, this matters because CNS's motion to sever attempts to hold Plaintiffs to the "similarly situated" standard even though it is too early for such a determination and even though the Court explicitly ordered that this phase of the case was to focus on joinder. Whether Plaintiffs are "similarly situated" is a question for the second phase.

For now, however, the question is simple: Has CNS met its burden of showing that judicial economy would be facilitated through severance while permissive joinder would result in prejudice? The answer is "no." Rather than use this first phase of the case to build its arguments for severance as the Court directed, CNS chose to sit back and largely rely upon the record from a different case involving completely different plaintiffs, *Hutzler, et al. v. Consolidated Nuclear Security, LLC*, No. 3:21-cv-304-TAV-DCP (E.D. Tenn.). CNS's motion to sever does not engage with whether severance is warranted for the Plaintiffs in this case.

Indeed, CNS has not shown and cannot show that it is prejudiced by Plaintiffs proceeding together in this single action. Severance would not eliminate witnesses or issues; it would multiply them across 19 cases. Plaintiffs would be forced to conduct largely duplicative discovery, retake or coordinate the same corporate and management depositions, and litigate the same factual and legal issues repeatedly. Judicial economy would be seriously undermined in doing so. This Court has jurisdiction over each Plaintiff's claims because all Plaintiffs in this case worked at the Y-12 facility in Oak Ridge, Tennessee, during the relevant time period. So, if the Court were to sever this case, each of the nineteen resultant cases would come right back to this Court as related actions, with each asserting the same FLSA claims and presenting the same legal and factual questions. This is precisely the inefficiency that Rules 20 and 21 are meant to avoid.

2

What is more, CNS's own litigation strategy demonstrates why Plaintiffs are properly joined in this case. CNS moved for summary judgment, demonstrating that it believes the Plaintiffs are similar enough for CNS to be entitled to summary judgment on each of their claims without delving into any individualized issues. It did not bring 19 separate motions. It brought one motion that asserts blanket arguments it contends apply across the board. So, even CNS believes that there are common factual and legal issues that the Court can decide in this single proceeding.

Granted, Plaintiffs do not oppose using CNS's 19 proposed groups as a discovery-management tool. In fact, in the discussion below, Plaintiffs map out how that would work and how the groupings would facilitate efficient litigation through the next phase of this case. As explained below, after working through merits discovery, Plaintiffs would likely move for a final "similarly situated" determination under *Clark*. At that point, the Court can decide—on a fully developed record—whether CNS's proposed groups should remain, be modified, or otherwise managed for trial. For now, however, there is no reason to require Plaintiffs to refile 19 separate cases. Accordingly, the Court should deny CNS's motion to sever.

## **PROCEDURAL BACKGROUND**

Plaintiffs filed this case late 2024, alleging that their employer, CNS failed to properly pay them under the FLSA for time spent donning and doffing protective clothing and equipment and for related walking, waiting, and security-related activities. (ECF Nos. 1, 22; *see also* Pls.' Opp. to Summ. J at 12-14 (July 28, 2026) (providing detail on the claims in this case).) CNS answered the First Amended Complaint in December of 2025. (ECF No. 24.) The parties filed their Rule 26(f) planning report on February 17, 2025. (ECF No. 11.) In February of 2025, CNS also moved the Court for a scheduling conference, requesting to discuss the schedule for filing CNS's anticipated motion to sever and a trial date. (ECF No. 12.) The Court denied CNS's motion, stating

3

that CNS's motion and the parties' planning report "make clear that the Parties understand and recognize the rules governing joinder." (*Id.* (citing Fed. R. Civ. P. 19-21).) The Court then ordered:

> [I]t is prudent to phase scheduling in this action. ***First***, the Parties may engage in discovery and Defendant may file any motion to sever or drop a party [*See* Doc. 11 at 3]. See Fed. R. Civ. P. 19-21. ***Second***, the Parties will proceed to Phase Two covering the merits that remain in the case . . . . The Court sets the below Phase One schedule. In Phase One, the Parties may conduct discovery on Plaintiffs' assertions in the Complaint and whether all Plaintiffs are properly joined in this action [*See* Doc. 11 at 3]. *See* Fed. R. Civ. P 19-21. ***Thereafter***, Defendant shall file any motion to sever or drop a party . . . . ***Then***, this action may proceed to Phase Two following the Court's determination regarding the proper parties and claims. The Court will set Phase Two scheduling deadlines after addressing any motion to sever or drop a party.

 (ECF No. 13 at 1-2 (emphases added).) After receiving various extensions over the next seven months, CNS moved to sever. (ECF No. 27.) CNS simultaneously—and without waiting for Plaintiffs' responsive briefing or for an order on its motion to sever—also filed a motion for summary judgment. (ECF No. 29.) Plaintiffs now submit this opposition in response to the motion to sever.

<u>**ARGUMENT**</u>

CNS's motion to sever is a poorly disguised motion for a final "similarly situated" determination. But the Court ordered that this phase of the case—Phase One—focus on the propriety of joinder under Rules 19 through 21, not a final "similarly situated" determination.

To explain, FLSA collective actions in the Sixth Circuit generally follow a two-step procedure. *Clark*, 68 F.4th at 1009. The first step is distribution of notice to the employees that plaintiffs hope to include in the case. *See id.* One of the main purposes of notice is to let those employees know that a lawsuit exists and that they can join it if they choose.[1] *See generally id.* Here, however, there is no reason for notice because there are already 673 Plaintiffs in this case.

---

[1] Notice is proper where the court determines there is a "strong likelihood" that plaintiffs are similarly situated to the other employees they intend to include in the case. *Clark*, 68 F.4th at 1011.

4

(*See* ECF Nos. 1, 22.) The second procedural step in a FLSA collective action occurs after discovery is fully developed. *Clark*, 68 F.4th at 1010-11. At that point, upon the plaintiff's motion for a "final similarly situated" determination or the defendant's motion to "decertify," the court determines whether the individuals who joined the case are, in fact, similarly situated. *Id*. That determination typically considers three non-exhaustive factors: (1) the employees' factual and employment settings; (2) any appliable individualized defenses; and (3) the degree of fairness and procedural impact of proceeding as a collective. *See Isaacs v. Landmark Recovery of Louisville, LLC*, No. 3:23-cv-00210, 2023 WL 6096730, at *10 (M.D. Tenn. Sept. 18, 2023) (citing *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017)). These factors highlight why a "similarly situated" or "decertification" determination would be inappropriate now, i.e., the factors are necessarily dependent on evidence. *See e.g., Walls v. Host Int'l, Inc.*, No. 1:15-cv-00564, 2015 WL 4644638, at *2 (N.D. Ohio Aug. 4, 2015) (finding the defendant's reliance on a prior decertification decision misplaced for its motion to sever); *Adams v. Diversicare Leasing Corp.*, No. 14-2990, 2015 WL 4208779, at *3 (W.D. Tenn. July 10, 2015) (finding decertification order unhelpful to permissive joinder analysis).[2] Ultimately, the FLSA's collective action mechanism exists to permit workers asserting common claims to pool resources and resolve common issues efficiently in a single proceeding. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989).

---

[2] For this reason, CNS's reliance on the Sixth Circuit's decision in *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741 (6th Cir. 2019) is misplaced. The posture of *Pierce* is completely different from the posture here. The *Pierce* decision came after a fully developed record, including evidence about the three job positions at issue, and followed a 14-day bench trial. *Id.* at 744. The Sixth Circuit considered whether the district court had erred in finding all the plaintiffs similarly situated under the applicable decertification factors: factual and employment settings, individualized defenses, and procedural and fairness concerns. *Id.* While the court found no error for two of the three job positions, the court concluded that employees in the third job position were not similarly situated because of factual differences in the products they sold and their job requirements. *Id.* at 745-746.

5

And again, the Court explicitly stated that Phase Two of the case, which would focus on merits and related motion practice, was not to commence until ***after*** a decision on CNS's motion to sever. This prematurity issue is brought into sharp focus by CNS's motion for summary judgment. CNS moved for summary judgment even though discovery into Plaintiffs' principal activities, job hazard analyses, protective clothing requirements, walking routes, waiting time, and security procedures is not complete. (*See* Pls.' Opp's to Summ. J at 12 (July 28, 2026).) These types of evidence also speak to the "similarly situated" factors of employees' factual and employment settings, any applicable individualized defenses, and the degree of fairness and procedural impact of proceeding to trial as representative action. But that evidence is intentionally undeveloped because the Court bifurcated the case, discovery is nowhere near complete, and Phase Two of the case—which is to focus on the merits—has not yet begun. The Court should deny CNS's motion.

Should the Court not hold that CNS's motion fails as a premature request for a final trial-management and similarly situated determination on an undeveloped record, the Court should still deny the motion because, as explained below, CNS has failed to meet its burden under Rule 21.

## I.      Plaintiffs are Properly Joined and Severance is Unwarranted.

Rule 20 of the Federal Rules of Civil Procedure allows for the permissive joinder of plaintiffs in a single action if, as is the case here:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). On the other hand, severance under Rule 21 "is not the norm—the propriety of severance under this rule usually arises in the context of misjoinder of the parties."

*Alvion Properties, Inc. v. Weber*, No. 3:08-0866, 2009 WL 3060419, at *8 (M.D. Tenn. Sept. 23, 2009). Factors relevant to severance are whether settlement of the claims or judicial economy would be facilitated, whether permissive joinder would result in prejudice to the parties, and whether different witnesses and documentary proof are required for separate claims. *Parchman v. SLM Corp.*, 896 F.R.D. 728, 733 (6th Cir. 2018). Importantly, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. The party moving to sever bears the burden to show that severance is warranted. *See E.E.O.C. v. Finish Line, Inc.*, No. 3:11-CV-00920, 2013 WL 139528, at *1 (M.D. Tenn. Jan. 10, 2013). CNS has not done so here.

### A. Plaintiffs Satisfy Rule 20's Requirements for Joinder.

#### 1. Plaintiffs' FLSA Claims Arise from the Same Transaction or Occurrence.

Determining if a particular situation constitutes the same transaction or occurrence for purposes of permissive joinder requires a case-by-case analysis of the facts alleged in the complaint. *See Adams*, 2015 WL 4208779, at *3; *see also Burton v. Zwicker & Assocs., PSC*, No. CV 10-227-WOB-JGW, 2011 WL 13156939, at *1 (E.D. Ky. Jan. 14, 2011) (recognizing that when a case is in its early stages, courts generally consider the allegations and consider them to be true). The Sixth Circuit has held that "[t]he words 'transaction or occurrence' are [to be] given a broad and liberal interpretation in order to avoid a multiplicity of suits.'" *Adams*, 2015 WL 4208779, at *3 (quoting *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) (citation omitted)). Courts ask whether the claims have a "logical relationship." *Adams*, 2015 WL 4208779, at *3; *Dowd v. DIRECTV, LLC*, No. 14-CV-14018, 2016 WL 28866, at *10 (E.D. Mich. Jan. 4, 2016).

Importantly, Rule 20 is intended to keep related disputes together and to avoid "wholly unrelated" claims—not to require identical facts for every plaintiff. *Walls*, 2015 WL 4644638, at

Case 3:24-cv-00436-KAC-JEM   Document 39   Filed 07/28/26   Page 7 of 19   PageID #: 1530

*3 (finding joinder proper where the defendant engaged in the same pattern of conduct with respect to its treatment of the plaintiffs even though some facts were unique to each plaintiff); *Burton*, 2011 WL 13156939, at *2 (concluding claims arose from the same transaction or occurrence even though there were "some obvious differences in the [p]laintiffs' various causes of action," because plaintiffs were employed during the same general time period by the same employer at the same location, make similar allegations, and assert similar causes of action); *Brantley v. Cinergy Corp.*, 2007 WL 2462652, at *10 (S.D. Ohio Aug. 27, 2007) (denying motion to sever even though some facts are unique to each plaintiff where they make some "parallel and overlapping allegations" relating to the company's employment practices); *Oram v. SoulCycle, LLC*, 979 F. Supp. 2d 498, 504 (S.D.N.Y. 2013) ("the same transaction or occurrence factor routinely has been found to exist where employee plaintiffs with varying factual circumstances allege the common denominator of a policy or practice . . . ."). In fact, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Adams*, 2015 WL 4208779, at *2 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)); *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 324 (S.D. Ohio 2002) ("Courts liberally permit joinder under Rule 20(a)."); *Burton*, 2011 WL 13156939, at *1 (quoting *Lee v. Dell Products, L.P.*, 2006 WL 2981301, at *7 (M.D. Tenn. Oct. 16, 2006)) ("Rule 20 is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits.").

Here, Plaintiffs easily meet Rule 20's first requirement. All 673 Plaintiffs worked for CNS at the Y-12 facility, assert the same claim for unpaid overtime wages under the FLSA, challenge the same compensation practice that paid them based on their shift rather than all the hours they worked, seek the same relief, and allege violations arising from the same time period before CNS

changed its pay practices in September 2024. *See* FAC, ECF No. 22, ¶ 24, PageID #770. Plaintiffs' claims therefore arise from a common nucleus of facts concerning CNS's pay policies and practices, and CNS asserts the same common defenses against the claims of each Plaintiff, including defenses based on Section 203(o) of the FLSA, the Collective Bargaining Agreement ("CBA"), principal activities, and compensability. That shared factual and legal foundation readily establishes a logical relationship, which CNS's summary judgment motion reinforces. *See Adams*, 2015 WL 4208779, at *3 (concluding that plaintiffs' allegations arose out of the same transaction or occurrence where they all worked at the defendant's facilities in Tennessee and were subject to the same workplace policies which caused them to work unpaid overtime hours); *Britt v. Mississippi Farm Bureau Cas. Ins. Co.*, No. 1:18-CV-38-GHD-DAS, 2022 WL 619655, at *3 (N.D. Miss. Mar. 1, 2022) (finding all of the plaintiffs' claims arose out of the defendant's practice patterns of classifying employees and the alleged misclassification of their employment); *Roeder v. DIRECTV, LLC*, No. 14-CV-4091-LTS, 2017 WL 11458455, at *3 (N.D. Iowa Feb. 1, 2017) (finding that the temporal scope of plaintiffs' alleged employment—occurring at overlapping times—supported a "single transaction" that plaintiffs' claims arose from).

Plaintiffs' claims will also require overlapping proof about CNS's pay policies and practices, change requirements, security procedures, and Y-12 worksite protocols. Courts routinely find Rule 20 satisfied where claims involve common witnesses, documents, and company-wide policies and practices such that a separate proceeding would create duplication and inefficiency. *See Walls*, 2015 WL 4644638, at *3; *Bocage v. M-I, L.L.C.*, No. CV 17-6124, 2019 WL 3753686, at *3 (E.D. La. Aug. 8, 2019).

CNS's contrary argument focuses on differences between job classifications, principal activities, changing requirements, work and changing locations, and walking time. But CNS's

9

motion merely catalogs differences; it does not establish their significance. At most, these "differences" may inform discovery groupings, representative proof, trial groupings, verdict forms, limiting instructions, or other case-management tools. They do not, however, undermine the logical relationship between Plaintiffs' claims or convert one common pay-practice case into 19 unrelated lawsuits. More fundamentally, CNS points to very little evidence about the Plaintiffs in *this* case showing that the purported differences are meaningful. On the present record, it is clear that Plaintiffs' FLSA claims arise from common policies and practices and therefore belong in a single action. As discussed below, any case-management concerns can be addressed through targeted discovery procedures without severing the case into 19 separate lawsuits.

### 2. Common Questions of Law and Fact Exist.

Rule 20's second requirement—the existence of at least one common question of law or fact—is also satisfied. Only one common question of law or fact is required, and courts easily find that requirement is met in FLSA actions challenging a common pay practice. *Adams*, 2015 WL 4208779, at *4; *Walls*, 2015 WL 4644638, *2; *Bocage*, 2019 WL 3753686, at *3; *Britt*, 2022 WL 619655, at *3. Moreover, the existence of individualized proof does not defeat joinder where common legal and factual questions remain. *See Burton*, 2011 WL 13156939, at *3; *Arnold v. DIRECTV, LLC*, No. 4:10-CV-352-JAR, 2015 WL 1821088, at *3 (E.D. Mo. Apr. 21, 2015).

Here, Plaintiffs' claims turn on common FLSA compensability questions about donning and doffing, walking and waiting time, security-related time, the continuous workday rule, and CNS's reliance on Section 203(o) of the FLSA. Those questions apply across all Plaintiffs, even if certain facts vary by job classification, change house location, or work location as CNS contends. Section 203(o), for example, addresses whether certain clothes-changing time may be excluded from measured work time under a CBA either by express terms or a custom or practice; it does not

10

eliminate the separate question of whether donning or doffing can constitute a principal activity that starts or ends the continuous workday, nor does it resolve whether walking, waiting, or security-related time occurring within that workday is compensable. *See* 29 U.S.C. § 203(o).

CNS's own motion practice confirms that there are common questions of law and fact. In its summary judgment motion and its motion to sever, CNS asks the Court to resolve common legal and factual questions about Section 203(o), the CBA, the continuous-workday rule, whether donning and doffing can be principal activities, and whether pre- and post-shift walking, waiting, and security-related time are compensable. These are precisely the type of common legal and factual issues Rule 20 contemplates. *See Roeder*, 2017 WL 11458455, at *4 (finding second prong met where there would be an overlap of evidence regarding both law and fact as many questions posed to the jury will be mixed questions of law and fact).

In fact, CNS's simultaneous motions for summary judgment and severance underscore the tension in CNS's position. For severance, CNS insists Plaintiffs' claims are too individualized to proceed in one case. Yet for summary judgment, rather than waiting for a record to develop in this case, CNS asks the Court to enter judgment against all 673 Plaintiffs at once based largely on the pleadings and excerpts from the record in *Hutzler*, a case involving different plaintiffs. CNS cannot have it both ways: if common facts and legal defenses are sufficient for CNS to seek case-wide summary judgment, they are sufficient to defeat severance at this stage. *See Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 439 (W.D. Wisc. 2008) ("[I]t is somewhat ironic that defendant is now arguing that it is impossible to determine liability on a class wide basis. After all, it was defendant that moved for summary judgment before almost any discovery had been conducted, arguing that it was possible to resolve the entire case as a matter of law without regard to the differences between the plaintiffs."); *Learing v. Anthem Cos., Inc.*, 722 F. Supp. 3d 929, 937 (D.

11

Minn. 2024), *amended on reconsideration in part*, 795 F. Supp. 3d 1118 (D. Minn. 2025) (recognizing that an inherent tension exists between the employer's summary judgment argument—that all employees' claims fail because they are properly classified as exempt—and its opposition to collective proceedings citing differences between the employees' subject areas and work settings).

Whether some Plaintiffs' claims will ultimately require different proof or tailored trial-management procedures does not eliminate those common questions. It merely raises case-management issues that can be addressed through discovery, representative proof, trial groupings, verdict forms, or other procedural tools short of severance.

Because both of Rule 20's requirements are met, this Court should conclude that Plaintiffs' FLSA claims are properly joined.

### B. CNS is Not Prejudiced by a Single Lawsuit, and Its Concern over Jury Confusion is Mere Speculation.

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. But the party moving for severance bears the burden. That is, severance would only be appropriate here if CNS shows that maintaining this action as a single action would impose undue burden, unnecessary expense, unfair prejudice, or an unmanageable risk of jury confusion at trial. *Burton*, 2011 WL 13156939, at *3. CNS has done none of those things.

*First*, severance would undermine—not promote—efficiency. All 673 Plaintiffs assert the same FLSA claim against the same defendant and challenge the same compensation practices. Severing this action into 19 lawsuits would require the parties to duplicate discovery, re-brief the same legal issues, present the same corporate and management witnesses repeatedly, and litigate overlapping factual questions in separate proceedings. Courts routinely deny severance under such

12

circumstances because it wastes judicial resources and creates needless duplication. *See Adams v. 3M Co.*, No. 7:21-CV-82-REW-CJS, 2024 WL 4298780, at *5 (E.D. Ky. Sept. 26, 2024) (declining to sever claims of hundreds of plaintiffs with overlapping claims consisting of similar underlying allegations against the same set of defendants where separate actions would certainly create duplicative discovery and legal briefing); *Britt*, 2022 WL 619655, at *2 (concluding that it would be a judicially inefficient use of the court's docket management to have separate trials, particularly where the jury's analysis as to each of the plaintiff's claims would not be an unreasonable task that will cause jury confusion or prejudice when all plaintiffs claim that defendant employed them and failed to pay them overtime in violation of the FLSA); *Burton*, 2011 WL 13156939, at *4 (denying severance where it would lead to "quintupling the number of trials, which would be an inefficient usage of the Court's resources, especially since all Plaintiffs share at least some of the same causes of action against the same Defendant"); *Davis v. Kohler Co.*, No. 115CV01263STAEGB, 2018 WL 6515353, at *2 (W.D. Tenn. Oct. 24, 2018) (denying severance where the issue of whether plaintiffs are similarly situated would need to be decided six times by six different courts, with the risk of inconsistent results). Judicial economy, on the other hand, is best served by maintaining this case as a single lawsuit. *Dowd*, 2016 WL 28866, at *10; *Brantley*, 2007 WL 2462652, at *10.

*Second*, CNS has not shown that a single action is unmanageable or prejudicial. Although CNS says it could not defend one case without calling a "consequential number of witnesses," it never explains how 19 separate lawsuits would reduce the number of witnesses, documents, or issues, or who it intends to call, why, which issues require them, or why representative testimony would be insufficient. (ECF No. 28 at p. 12.) To the contrary, severance would multiply those burdens by requiring overlapping corporate and management witnesses to participate in multiple cases rather than one. CNS's own acknowledgement of witness overlap therefore weighs against

severance, not in favor of it. Nor do CNS's assertions regarding individualized issues justify severance. Much of the purported variation concerns damages or other plaintiff-specific facts that can be refined through discovery and trial management without dividing the case into 19 separate lawsuits. *Dowd*, 2016 WL 28866, at *10 ("Almost all facts that are unique to individual plaintiffs or defendants are confined to the calculation of damages; these issues likely can be refined during discovery without undue risk of confusing the factfinder's separate decision on the merits.").

If anyone would be prejudiced by severance, it is Plaintiffs. Severance would strip Plaintiffs of the benefits and efficiencies of a representative proceeding while requiring the Court to manage overlapping discovery, repeated testimony, repetitive motion practice, and risk inconsistent rulings on the same FLSA questions. Rule 21 does not require that result, and CNS has offered no persuasive reason to impose it.

Neither *White* nor *Abraham*—two cases CNS relies on—support severance here. *White* involved 75 salaried store managers who worked at Dollar General stores scattered across 23 states, with only one plaintiff who worked within the geographic reach of the court, and it included a request to not only sever but also transfer claims to the districts where the plaintiffs worked. *White v. Dolgencorp, LLC*, No. 3:23-cv-01169, 2024 WL 5188738, at *1 (M.D. Tenn. Dec. 20, 2024). Critically, the plaintiffs in *White* also conceded that their individual factual circumstances controlled the exemption analysis. *Id.* at *8. The court ultimately rejected the plaintiffs' attempt to downplay the importance of the factors relevant to the exemption analysis concluding that the "fact-intensive and individualized nature of the necessary inquiry into each plaintiff's employment setting would result in scores of mini-trials involving different evidence and testimony regarding each [plaintiff's] factual circumstances." *Id.* at 10. And, because different witnesses and different documentary proof would be required for each plaintiff's individualized claim, a trial with 75

14

plaintiffs would be unmanageable. *Id.* This case is materially different from *White*. Here, by contrast, all 673 Plaintiffs worked for the same defendant at the same Y-12 location in Oak Ridge, Tennessee and all challenge the same compensation practice. And unlike the plaintiffs in *White*, Plaintiffs here do not concede that their FLSA claim can only be proven by individualized proof, and there is no request to transfer to other district courts. Rather, if severed, all claims would land back in this Court because all Plaintiffs worked in this jurisdiction.

*Abraham v. Grp. O, Inc.*, No. 16-cv-11642, 2018 WL 620034, at *2 (N.D. Ill. Jan. 30, 2018) is equally distinguishable. Each of the 76 plaintiffs in that case were opt-in plaintiffs in a prior collective action that had been decertified and after the court already found they were not similarly situated. *Id.* The plaintiffs also worked in many different positions, under different circumstances, and during different time periods. *Id.* at *4. Here, there has been no prior decertification or final similarly situated determination. Plaintiffs' claims are properly joined because they worked at one facility and their claims arise from the same challenged compensation practice for a finite time period before CNS changed that practice.

*Third*, CNS's jury-confusion argument is both premature and speculative. Courts routinely reject severance based on speculative jury-confusion concerns, particularly before discovery has clarified what claims, evidence, and witnesses will be presented at trial. For example, in *Burton*, the Court rejected as premature the defendant's claim that a jury would be overwhelmed and confused by "unique facts" and a "vast amount of evidence at trial" because discovery was still in its early stages and it was too soon to know what issues would ultimately be submitted to a jury or how much evidence would be presented at trial. *Burton*, 2011 WL 13156939, at *3. Other courts have reached a similar conclusion, finding concerns about prejudice or jury confusion are better addressed after the factual record is developed and can often be managed through traditional trial-

15

management tools. *See McCormick v. Festiva Dev. Grp., LLC*, 269 F.R.D. 59 (D. Me. 2010) (denying severance and noting that at the stage of the proceedings before proposed classes were approved, it was not yet known whether the company would be prejudiced or whether jury instructions could not adequately prevent jury confusion and prejudice); *Johnson v. UPS, Inc.*, No. 3:22-cv-00059, 2023 WL 6393172, at *2 (M.D. Tenn. Sept. 29, 2023) (concluding that consideration of the defendant's claim of potential prejudice and jury confusion is more appropriate after development of the facts in discovery); *Roeder*, 2017 WL 11458455, at *4 (explaining that voir dire, opening statements, closing arguments, verdict forms, and jury instructions can ensure the jury considers each plaintiff's claim separately).

The same is true here. Discovery is ongoing, and significant merits discovery remains to be completed. Once it is determined what evidence will ultimately be presented at trial, the Court can address any concrete jury confusion or trial-management issues later through case management tools that are far less drastic than severance.

*Arnold* is especially instructive on this point. There, DIRECTV argued that individualized employment evidence and logistical issues warranted severance and risked jury confusion. The court disagreed, concluding that such concerns could be addressed through case-management tools, including adopting the proposed subclasses for discovery and trial. *Arnold*, 2015 WL 1821088, at *3-4. The same practical solution exists here. CNS's proposed 19 groups can be used to effectively organize and manage discovery while preserving efficiencies of a single action.

In short, CNS has not shown that severance is necessary to avoid prejudice or jury confusion. What it has shown is that case management will be required as this litigation progresses—a reality present in many large FLSA actions and one that courts routinely address without multiplying a single case into numerous separate lawsuits.

16

## II.     This Court Should Adopt Plaintiffs' Proposal for Phase Two and Deadlines.

Rather than prematurely decide trial structure, the Court should deny severance and use CNS's proposed 19 groups solely as a discovery-management tool. Specifically, the Court can adopt the groups for Phase Two discovery, set a merits-discovery deadline, and establish a post-discovery deadline for Plaintiffs' anticipated motion for a final similarly situated determination under *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023).

Proceeding in this manner allows the parties to develop the record in an orderly fashion before the Court addresses any final similarly situated or trial-management issues. This approach provides CNS with the discovery structure it says it needs while preserving efficiencies of litigating a single action on behalf all 673 Plaintiffs. It also avoids duplicative proceedings, conserves party and judicial resources, and remains consistent with the FLSA's purpose of efficient adjudication where workers challenge a common policy or practice, as they do here. Further, whether and to what extent representative proof can be presented across some or all of the proposed groups in this action are merits and trial-management questions that should be decided on a complete record, not while significant merits discovery remains. Once discovery closes, the parties and the Court will be in a far better position to determine whether CNS's 19 groups should be maintained, modified, consolidated, or otherwise managed for trial.[3] Severance now would effectively determine a trial structure before the necessary evidentiary record exists. The more prudent course is to deny severance, permit merits discovery to proceed in this single action using CNS's proposed groups,

---

[3] Plaintiffs' agreement to use CNS's proposed groups for discovery purposes should not be construed as a concession that those groups are appropriate for trial management or a final similarly situated determination. Even CNS's grouping appears to undercut its own argument regarding Plaintiffs being too different to proceed together. For example, Group 4 combines Carpenters, Masons, Painters, Insulators, and Iron Workers. Given this breadth, Plaintiffs should be able to test through discovery whether some groups should be consolidated. Nonetheless, final trial groupings would be premature before merits discovery is complete.

17

and address any final similarly situated and trial-management issues after discovery through a *Clark* motion.

## **CONCLUSION**

CNS has not provided this Court with sufficient grounds to splinter this single FLSA action into 19 separate lawsuits. Accordingly, this Court should (1) deny CNS's motion to sever; (2) and adopt Plaintiffs' proposal for completing Phase Two; and (3) establish a deadline for Plaintiffs' similarly situated motion.

Dated: July 28, 2026

Respectfully submitted,

**NICHOLS KASTER, PLLP**
*/s/ Rachhana T. Srey*
Rachhana T. Srey (pro hac vice)
4700 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
srey@nka.com

Jennifer B. Morton (BPR #015585)
Summer H. McMillan (BPR # 020296)
Cheyenne E. Peters (BPR # 043189)
**JENNIFER MORTON LAW, PLLC**
8217 Pickens Gap Road
Knoxville, TN 37920
(865) 579-0708
jen@jmortonlaw.com
summer@jmortonlaw.com
cheyenne@jmortonlaw.com

Gary Ferraris (BPR #016086)
333 Huxley Road
Knoxville, TN 37922
(865) 256-3515
gferraris@ferrarislaw.com

18

**Certificate of Service**

I hereby certify that on July 28, 2026, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel specified on the electronic filing receipt.

*/s/ Rachhana T. Srey*
Rachhana T. Srey

19