# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE

Jacob Gardner, et al.

      Plaintiffs,

v.

Consolidated Nuclear Security, LLC,

      Defendant.

Case No: 3:24-cv-00436-KAC-JEM

(JURY DEMANDED)

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## **INTRODUCTION**

The Fair Labor Standards Act ("FLSA") generally requires employers to compensate employees for time spent performing "principal activities." Principal activities are those that are "integral and indispensable" to the work employees were engaged to perform. There are, however, nuances when it comes to changing into and out of protective clothes and equipment, i.e., "donning and doffing." Generally, when donning and doffing is a principal activity, employers must pay employees starting when they don clothing and equipment. Likewise, employers must pay employees for the time until they end their shift and doff clothing and equipment. This is called the "continuous workday rule." Separately, under Section 203(o) of the FLSA, employers are not required to pay employees for time spent changing clothes or washing up at the beginning or end of the workday if a collective bargaining agreement excludes that time from compensation through its "express terms" or a "custom or practice" of nonpayment.

Here, Plaintiffs worked for Defendant Consolidated Nuclear Security, LLC ("CNS") at

1

CNS's nuclear weapons production factory, where they were exposed to the numerous hazardous materials associated with making nuclear weapons. Naturally then, protective clothing and equipment was integral and indispensable to their work. But CNS did not always pay them for donning and doffing. Nor did CNS always pay them for the time spent walking from the changing house to the worksite, walking from the worksite to the changing house, or for security screening and other activities that occurred between walking to and from the changing house and worksite (collectively, "walking and waiting time"). So, Plaintiffs filed this lawsuit. Rather than moving to dismiss or completing discovery, CNS moved for summary judgment. The Court should deny CNS's motion.

*First*, the motion is procedurally improper. The Court explicitly bifurcated this case, ordering that litigation over the merits commence ***after*** the Court's decision on CNS's motion to sever. CNS's motion to sever remains pending and discovery is not even complete. Tellingly, CNS cites no evidence from this case, instead relying on record excerpts from a separate lawsuit that has since settled, *Hutzler, et al. v. CNS*, No. 3:21-cv-00304 (E.D. Tenn.). CNS has not shown the absence of genuine disputes of material fact as to each of the 673 Plaintiffs in ***this*** case.

*Second*, CNS largely ignores Plaintiffs' walking and waiting time claims, which under *Franklin v Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010), are not dependent on whether Section 203(o) of the FLSA applies. Recognizing this, CNS unabashedly asks this Court to hold—more than a decade after-the-fact—that the Supreme Court's opinions in *Sandifer v U.S. Steel Corp.*, 571 U.S. 220 (2014) and *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014) overruled *Franklin*. More astonishingly, if this Court does not do so, CNS requests that the Court certify the issue for interlocutory review. Neither the FLSA nor binding case law support CNS's requests. *Sandifer* and *Integrity Staffing* leave untouched *Franklin's* well-reasoned holding that whether an activity is a

2

principal activity for the purpose of triggering the continuous workday rule is not dependent on whether that activity is compensable under Section 203(o).

*Third*, genuine material fact issues preclude summary judgment in two ways. One, CNS has not engaged in any analysis of how the continuous workday rule applies to any of 673 Plaintiffs in this case with respect to walking and waiting times. Nor could CNS because discovery is nowhere near complete, the limited record to date indicates that there are fact questions on this issue, and *Integrity Staffing* does not establish a brightline rule against compensating employees for security screening. Two, as to whether time spent actually donning and doffing is compensable, there is no "express term" in the collective bargaining agreement excluding this time from compensation, and there are numerous fact questions surrounding any "custom or practice" of nonpayment.

The Court should deny CNS's motion for summary judgment.

## RELEVANT BACKGROUND

## I. PLAINTIFFS' RESPONSE TO CNS'S STATEMENT OF FACTS

Plaintiffs admit that they are 673 non-exempt hourly paid bargaining unit employees who work for CNS at the Y-12 National Security Complex in Oak Ridge, Tennessee ("Y-12"). (*See* Def. Br., ECF No. 30 at PageID #1488-89.) Plaintiffs admit that, since 2014, CNS has managed and operated Y-12 pursuant to a contract with the National Nuclear Security Administration ("NNSA") and that Y-12 is a nuclear weapons production facility. (*See id.*) And Plaintiffs admit that they seek overtime compensation for time spent on unpaid work activities, including changing clothes before and after the designated start and end of their shifts and for pre- and post-shift activities like walking and waiting time. (*See id.*) Though CNS takes issue with the sufficiency of the operative

complaint—a criticism that has no place at summary judgment[1]—it is clear that Plaintiffs seek compensation for the following, employer-mandated activities:

- <u>Changing into and out of required CNS-provided clothing</u>, including but not limited to flame resistant and/or arc-rated clothing, shirts, pants, coveralls, jackets, raincoats and rain pants, socks, undergarments, safety boots, safety glasses, and other protective clothing, that is integral and indispensable to Plaintiffs' principal activities despite CNS not qualifying for the exception for clothes changing under 29 U.S.C. §203(o). (FAC, ECF No. 22 at PageID #768-69, ¶ 18(d).)[2] This list is not exhaustive. For example, the record in the related *Hutzler* case demonstrates that some employees donned other employer-provided accessories, including belts that can pass through a metal detector. (*See e.g.,* Ex. 1, Choate Dep. 34-35; Ex. 2, Ashburn Dep. 32; Ex. 3, Poe Dep. 20-21.)

- <u>Engaging in waiting time and walking time</u>. (FAC, ECF No. 22 at PageID #768-69, ¶ 18(b).) Again, the record in *Hutzler* shows that some employees' first principal activity could be donning protective clothing, *see e.g.,* Ex. 4, Hamby Dep. 29, or completing security screening before "clocking in," *see e.g.,* Ex. 5, Wright Dep. 26-28. Walking from the changing house to clock in, waiting to clock in because of security screening delays, and walking back to the changing house could also be part of employees' workday, among other things. (*See e.g.,* Ex. 2, Ashburn Dep. 32; Ex. 6, Pippin Dep. 40; Ex. 7, Thompson Dep. 35; Ex. 8, King Dep. 22.)

---

[1] Plaintiffs deny CNS's assertion that the First Amended Complaint ("FAC") describes the uncompensated activities in only general terms. (*See* FAC, ECF No. 22 at PageID #769, ¶ 18(a)-(d).) Further, this assertion in CNS's "statement of facts" is improper because it questions the sufficiency of the Plaintiffs' pleading, rather than providing factual or legal support for summary judgment as required under Local Rule 7.1(b).

[2] Plaintiffs deny CNS's characterization of certain items falling under *Sandifer's* definition of "changing clothes" and, thus, Section 203(o). (*See infra* at Pt. II.B.)

4

Notably, the *Hutzler* plaintiffs and the Plaintiffs in this case are not the same people. The *Hutzler* deposition transcripts cited above merely indicate what discovery is likely to show in this case but do nothing to eliminate fact questions as to CNS's liability to each of the specific Plaintiffs here.

Even if the *Hutzler* record could conclusively speak to liability in this case, CNS would still not be able to meet its burden of proving summary judgment against each of the 673 Plaintiffs in this case. For example, some *Hutzler* plaintiffs donned Carhartt khaki pants and a cotton Carhartt t-shirt before the start of their shifts, *see e.g.,* Ex. 7, Thompson Dep. 26;  Ex. 4, Hamby Dep. 33; Ex. 2, Ashburn Dep. 32; Ex. 6, Pippin Dep. 51-52; Ex. 9, Griffith Dep. 33; Ex. 1, Choate Dep. 24-25; Ex. 10, Green Dep. 25-26; Ex. 11, Graham Dep. 31-33, but many donned flame resistant ("FR") clothes depending on their job classification, *see e.g.,* Ex. 12, Ruth Dep. 26; Ex. 13, Walters Dep. 18-20; Ex. 14, Freshour Dep. 42-44; Ex. 15, Whitus Dep. 22; Ex. 8, King Dep. 27-28; Ex. 16, Hutzler Dep. 23-25; Ex. 17, McDaniel Dep. 17-19; Ex. 3, Poe Dep. 20-21. And while the primary difference between FR clothing and non-FR clothing is a physical marking, Plaintiffs deny that FR clothes are identical to the cotton clothes other employees wear. (*See e.g.,* Ex. 13, Walters Dep. 19 ("they're… similar… but not identical."); Ex. 16, Hutzler Dep. 23-25.) One *Hutzler* plaintiff stated that he wore "scrubs" over his own clothes and was subsequently told that he could only wear company-issued clothing. (*See* Ex. 18, Oody Dep. 36; *see also* Ex. 5, Wright Dep. 25 ("It is an expected condition that … we have to doff off our street clothes"); Ex. 16, Hutzler Dep. 23-25.) Similarly, though CNS makes much of Chemical Operator Griffith's testimony in *Hutzler*, he was one of twenty-one deponents from over ten different job classifications. (*See* Ex. 12, Ruth Dep. 7; Ex. 19, Johnson Dep. 7-8; Ex. 20, Shelton Dep. 7; Ex. 7, Thompson Dep. 7; Ex. 4, Hamby Dep. 7; Ex. 2, Ashburn Dep. 7; Ex. 6, Pippin Dep. 7; Ex. 1, Choate Dep. 8; Ex. 8, King Dep. 6-8; Ex. 13, Walters Dep. 6; Ex. 15, Whitus Dep. 7; Ex. 10, Green Dep. 7; Ex. 14, Freshour Dep. 7; Ex. 17,

5

McDaniel Dep. 6; Ex. 3, Poe Dep. 6.)

To be sure, all of the Plaintiffs in this case assert FLSA claims that arise out of the same series of transactions and occurrences and give rise to the same questions of law or fact, e.g., CNS's requirement that these employees perform pre- and post-shift activities without pay and whether that time must be compensated. (*See* Pls. Opp'n Mot. to Sever, ECF No. 39 at PageID # 1530-35.) Whether and when those activities were performed is knowable through discovery yet to be completed. (*Id.*; *see also* Declaration of Rachhana T. Srey Pursuant to Fed. R. Civ. P. 56(d) ("Srey Decl.").) And Plaintiffs have proposed a manageable way to work through discovery. (*See* Pls. Opp'n Mot. to Sever, ECF No. 39 at PageID # 1540-41.) But **CNS** has moved for summary judgment, placing the burden squarely on it to prove there are no disputes of material fact as to these 673 Plaintiffs' claims. CNS's "statement of facts," which relies upon *Hutzler* and Plaintiffs' complaint, does nothing of the sort.

In any event, Plaintiffs deny that they donned or doffed all required protective clothing and equipment on paid time. FR clothes, cotton clothes, scrubs, composite toed boots, safety glasses, and earplugs are all protective clothes and equipment that Plaintiffs don and doff on unpaid time. (*See, e.g.*, Ex. 12, Ruth Dep. 21, 25-30; Ex. 19, Johnson Dep. 29, 43-46; Ex. 20, Shelton Dep. 48-52; Ex. 7, Thompson Dep. 23-27; Ex. 4, Hamby Dep. 30-35, 52-53; Ex. 21, Cruze Dep. 24-26, 37; Ex. 6, Pippin Dep. 34-36, 40, 51-52; Ex. 9, Griffith Dep. 29, 33-34; Ex. 1, Choate Dep. 23, 28, 34-35; Ex. 8, King Dep. 16, 27-28; Ex. 13, Walters Dep. 18-20; Ex. 15, Whitus Dep. 22-25; Ex. 5, Wright Dep. 32-35, 61; Ex. 18, Oody Dep. 36-38, 40-41; Ex. 10, Green Dep. 25-26, 29; Ex. 11, Graham Dep. 20, 31-33, 39; Ex. 16, Hutzler Dep. 23-25, 65; Ex. 14, Freshour Dep. 19-20, 42-44; Ex. 17, McDaniel Dep. 15-19; Ex. 3, Poe Dep. 20-22, 43-44.) And Plaintiffs deny that they are not entitled to compensation for time spent changing clothes "before the designated starting time and

after the designated quitting time by changing clothes."

## II. PLAINTIFFS' ADDITIONAL STATEMENT OF FACTS

### A. Plaintiffs Had to Wear Protective Clothing and Equipment to Do Their Jobs.

Bargaining unit employees regularly encountered various hazards across the jobsites located at the Y-12 facility, including but not limited to beryllium, asbestos, enriched uranium, and metal dust. (*See* Ex. 22, Beryllium Safety Data Sheet; Ex. 23, Enriched Uranium Operations Building Exposure Matrix; Ex. 24, Highly Enriched Uranium Material Storage Building Exposure Matrix; Ex. 25, Hazard Identification Worksheet; Ex. 26, Job Descriptions, at PRO 01722, 01724, 01770, 01784; Ex. 2, Ashburn Dep. 8, 13; Ex. 9, Griffith Dep. 18; Ex. 19, Johnson Dep. 11; Ex. 4, Hamby Dep. 53; Ex. 16, Hutzler Dep. 46; Ex. 8, King Dep. 31; Ex. 6, Pippin Dep. 12; Ex. 3, Poe Dep. 62; Ex. 15, Whitus Dep. 33; Ex. 5, Wright Dep. 20.) Indeed, thirty-one of the thirty-nine job descriptions CNS has produced in this case explicitly state that job duties may require entry into the Materials Access Areas ("MAA"), which are "security areas that are established to protect Category I quantities of [Special Nuclear Material]." (Ex. 27, DOE Physical Protection Program, at PRO 04372; *see generally* Ex. 26, Job Descriptions.)[3] Federal occupational safety regulations require CNS to provide employees with protective clothing and designate specific changing locations to prevent cross-contamination. 10 C.F.R. § 850. Safety data sheets prepared by chemical manufacturers in compliance with OSHA for many of the materials present at Y-12 also recommend wearing protective clothing, including fire and flame resistant or retardant clothing, as well as nonsynthetic clothing. (Ex. 28, Safety Data Sheets.)

---

[3] Even if an employee was not assigned to work in an MAA every day, they were expected to be ready to work in an MAA. (*See* Ex. 9, Griffith Dep. 18; Ex. 19, Johnson Dep 11; Ex. 13, Walters Dep. 10; Ex. 15, Whitus Dep. 10.) According to one worker, CNS employees are "instructed to dress in the manner of the personnel [they're] supporting." (*See* Ex. 20, Shelton Dep. 67.)

7

CNS required all Plaintiffs to show up to their shift ready to work. (*See* Ex. 29, Grievance PMG-48-Q at PRO 001630 ("The use of such does not relieve employees of their obligation to be dressed and ready to begin work at the start of their shift."); *see also* Ex. 5, Wright Dep. 25.) In pre-shift meetings, the *Hutzler* record shows that supervisors emphasized that changing is required. (*See* Ex. 8, King Dep. 30; Ex. 13, Walters Dep. 20; Ex. 15, Whitus Dep. 32.) Additionally, specific workers from the *Hutzler* action testified that the applicable Job Hazard Analysis ("JHA") required certain clothing to perform the worker's jobs. (Ex. 3, Poe Dep. 60-61.) Workers who changed into clothing reported that they change to avoid "tak[ing] [the hazards] home." (Ex. 21, Cruze Dep. 38.) Workers also stated that "there was a time where you could wear your personal clothes to all these work locations and they found out that we were contaminating all of East Tennessee, so they changed." (Ex. 16, Hutzler Dep. 83; *see also* Ex. 5, Wright Dep. 25 ("It is an expected condition that whatever we have to– we doff off our street clothes[.]").)

### B. The Collective Bargaining Agreement Does Not Conclusively Establish a Custom or Practice of Unpaid Time.

The ATLC is an umbrella labor union representing the interests of 12 other local labor unions in Oak Ridge, Tennessee. (Ex. 2, Ashburn Dep. 28.) CNS entered into a collective bargaining agreement ("CBA") with the ATLC in 2015. (*See* Ex. 30, 2015 CBA.) The parties renewed the CBA in 2020. (*See* Ex. 31, 2020 CBA.)

The CBA does not specifically address a company practice of compensation related to donning time prior to the shift beginning. (*See generally* Ex. 30, 2015 CBA; Ex. 31, 2020 CBA.) In each version going back to 1970, the CBA states: "The company will maintain its present practice of allowing employees a reasonable amount of time to wash up and change clothes." (*See* Ex. 30, 2015 CBA, at PRO 01093; Ex. 31, 2020 CBA, at PRO 01212-13; Ex. 32, 1970 CBA, at PRO 00199.) Nothing in the CBA defines whether this "present practice" applies to changing time

8

before and/or after a shift or whether it is excluded from the compensable workday. (*Id.*) Rather, notes from CBA negotiations indicate that this "present practice" refers to end-of-shift practices. (*See* Ex. 33, 1972 Subcommittee Rep., at PRO 001431 (describing the "maintenance of privileges" section as the "wash up time and Company-furnished work clothes section"); Ex. 34, 1975 Subcommittee Rep., at PRO 01433 (discussing only wash up time and changing clothes at end-of-shift).)

The CBA states as to overtime, "Overtime at the rate of 1 ½ times the regular rate of pay shall be paid as follows: a. For hours worked in excess of 40 within any normal week, OR b. For hours worked in excess of 8 in any 24-hour period." (Ex. 30, 2015 CBA at PRO 01075-76; Ex. 31, 2020 CBA, at PRO 01196-97.) Chief Steward Hutzler testified that he attempted to discuss pre-shift changing time during CBA negotiations, but was told that the topic could not be discussed because it was "out of bounds." (Ex. 16, Hutzler Dep. 58-60; *see also* Ex. 35, 1990 Negotiations Summary at PRO 01487 (describing wash up time and clothing negotiations as "a can of worms. There is abuse. If the Union has particular problems, it needs to state what they are.").)

## C. Prior Grievances and Litigation

On November 16, 2009, all machinists filed a grievance "requesting compensation for changing clothes and travel time prior to shift change[.]" (Ex. 36, Grievance PMU-733-O, at PRO 01713.) Following a third step hearing, the company denied the grievance and stated, "No provision to provide compensation for time spent donning required clothing was negotiated into the current bargaining agreement[.]" (*Id.* at 01710.) On October 17, 2019, Mr. Hutzler, on behalf of all West End Electricians, filed a grievance disputing that CNS provided its workers with a reasonable amount of time to change and wash up. (Ex. 37, Grievance PMU-185-P, at PRO 01706.) On December 16, 2020, Stephen Picarello, filed a grievance seeking, among other things,

9

compensation for the time required to complete security at the beginning and end of workers' shifts who enter the Protected Area ("PA"). (Ex. 38, Grievance PMU-30-Q, at PRO 01619-20.)[4] On May 10, 2021, J. E. Duncan filed a grievance requesting time to change into company clothing on company time. (Ex. 39, Grievance PMU-62-Q, at PRO 01674.) On June 23, 2021, CNS denied Mr. Duncan's grievance stating that no contract violation occurred. (*See id.* at PRO 01676 (explaining that bargaining unit employees were allowed to receive compensation for changing time at the end of their shift, but not at the beginning of the shift).)

On August 25, 2021, Mr. Duncan and other named plaintiffs, including Mr. Hutzler, filed a lawsuit against CNS challenging the issues described above, among other unlawful time-shaving practices, under the FLSA. *See Hutzler, et al. v. CNS*, Case No. 3:21-cv-00304 (E.D. Tenn. 2024). On April 4, 2024, CNS and the ATLC agreed: "Employees will be directed to change at the beginning of their scheduled shift. The Parties understand changing into clothes will be on paid time and should not occur before the start of the scheduled shift." (Ex. 40, 2024 MOU.) On May 16, 2024, the *Hutzler* case settled. (Ex. 41, Settlement Agreement.)

## II. RELEVANT PROCEDURAL HISTORY

Plaintiffs filed the instant case in October of 2024 and filed an amended complaint in December 2025. (ECF Nos. 1, 22.) CNS answered the First Amended Complaint in December of 2025. (ECF No. 24.) The parties filed their Rule 26(f) planning report on February 17, 2025. (ECF No. 11.) That same day, CNS moved for a scheduling conference. (ECF No. 12.) The Court denied CNS's motion, but explained:

> [I]t is prudent to phase scheduling in this action. First, the Parties may engage in discovery and Defendant may file any motion to sever or drop a party[.] Second, the Parties will

---

[4] "Protected areas" are secured areas designed to protect certain DOE Assets, including but not limited to Category II or greater quantities of Special Nuclear Materials (SNM) and may contain classified matter. (*See* Ex. 27, DOE Physical Protection Program, at PRO 04373.)

proceed to Phase Two covering the merits that remain in the case[.] The Court sets the below Phase One schedule. In Phase One, the Parties may conduct discovery on Plaintiffs' assertions in the Complaint and whether all Plaintiffs are properly joined in this action[.] Thereafter, Defendant shall file any motion to sever or drop a party[.] ***Then***, this action may proceed to Phase Two ***following*** the Court's determination regarding the proper parties and claims. The Court will set Phase Two scheduling deadlines ***after*** addressing any motion to sever or drop a party.

(ECF No. 13 at 1-2 (emphases added).) CNS proceeded to request and receive four extensions of the deadline to file its motion to sever and filed the motion on February 9, 2026. (ECF No. 27.) Simultaneously—and without waiting for briefing to complete or an order on its motion to sever— CNS filed the instant motion for summary judgment. (ECF No. 29.)

The prematurity of CNS's motion is underscored by the status of discovery to date. While CNS has produced some documents in this case, it only just responded to Plaintiffs' second set of written discovery on July 9, 2026, with its counsel stating they would be in touch to "arrange for delivery of the documents" that are "ready to produce with these requests." (*See* Srey Decl. ¶ 8.) Approximately seven documents were produced six days before Plaintiffs' response was due, and Plaintiffs' counsel is unaware of the number of documents remaining for production. (*Id.*) Critically, CNS also stated that the JHAs, among other documents, are still being reviewed for production. (*Id.*) CNS' corporate policy requiring a JHA for various job positions shows why the JHAs are essential in this case as they "communicate potential hazards that are likely to be encountered during the performance of work and adequate controls that must be implemented to eliminate or mitigate these hazards[,]" including the need for protective clothing and equipment. (*See* Ex. 42, Job Hazard Analysis, at PRO 1869, 1871.) The parties have not yet taken any depositions in this action. (*See* Srey Decl. ¶ 7.)

Plaintiffs now submit this opposition to summary judgment.

11

<u>**ARGUMENT**</u>

Summary judgment is only appropriate "***if the movant shows*** that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). In determining whether there are genuine issues of fact, the court must view all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). CNS has not met its burden.

**I. CNS'S MOTION IS PROCEDURALLY IMPROPER.**

The Court was clear in bifurcating this case: merits discovery and motions are reserved for Phase Two. (*See* ECF No. 13.) Because CNS's motion to sever is pending, its motion for summary judgment is premature. Summary judgment is also premature because the parties still must undertake significant discovery. (*See generally* Srey Decl.) That discovery may resolve some factual disputes and leave others for trial. This matters because the purpose of Rule 56 and summary judgment "is not to cut litigants off from the right to trial by jury if they really have issues to try." *Lee v. Cleveland Clinic Found.*, 676 Fed. Appx. 488, 493 (6th Cir. 2017). "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). This is one such case where the Court should deny or, at minimum, defer ruling until such time as sufficient discovery is complete.

**II.  WHETHER AN ACTIVITY IS A PRINCIPAL ACTIVITY THAT TRIGGERS THE CONTINUOUS WORKDAY IS NOT DEPENDENT ON WHETHER THAT ACTIVITY IS COMPENSABLE UNDER SECTION 203(o), AND *FRANKLIN* REMAINS BINDING SIXTH CIRCUIT LAW ON THIS POINT.**

Whether an activity is a principal activity that triggers the continuous workday rule is not dependent on compensability of that activity under Section 203(o). CNS's arguments to the contrary and its request for interlocutory review fail because: (A) CNS's arguments are inconsistent with the FLSA, its history, and relevant case law; and (B) *Sandifer* and *Integrity Staffing* did not overrule the relevant holding in *Franklin*; and (C) the issue does not meet the standard for interlocutory review.

**A.  The FLSA and Relevant Case Law Establish that Compensability Under Section 203(o) is Unrelated to Whether an Activity Triggers the Continuous Workday.**

The FLSA requires employers to pay their employees. 29 U.S.C. § 207. Generally, all work time must be paid, i.e., it is "compensable." *See id.*; *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 25-30 (2005). But there are certain exclusions and related rules and concepts. Specifically relevant here are: (1) the continuous workday rule and the related concept of principal activities; (2) Section 203(o) of the FLSA, which makes certain activities not compensable depending on whether and how a collective bargaining agreement applies; and (3) the Sixth Circuit's opinion in *Franklin*.

**1.  Under the continuous workday rule, activities that occur between the first and last principal activity of the workday are compensable, and principal activities are those that are integral and indispensable.**

The Supreme Court initially broadly defined "work" and "workweek" for FLSA purposes because the FLSA itself does not define either term. *See Integrity Staffing v. Busk*, 574 U.S. 27, 31 (2014). Congress later responded to such breadth by passing the Portal-to-Portal Act, which amended the FLSA, and is codified at 29 U.S.C. § 254. Among other things, the Portal-to-Portal Act makes employees' time spent traveling to and from the place where they perform their

13

principal activities (and activities that are preliminary or postliminary to those principal activities) not compensable. 29 U.S.C. § 254(a).

Under the longstanding continuous workday rule, however, activities that occur between the first and last principal activity of the workday *are* generally compensable. *See IBP*, 546 U.S. at 28–29 (citing 29 C.F.R. § 790.6(b)). "Principal activity or activities" means "all activities which are an 'integral and indispensable part of the principal activities[.]'" *IBP*, 546 U.S. at 29–30 (quoting *Steiner v. Mitchell,* 350 U.S. 247, 252-253 (1956)). "An activity is . . . integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 574 U.S. at 33.

For example, in *Steiner*, the Supreme Court held that battery plant workers were entitled to compensation for "time incident to changing clothes at the beginning of the shift and showering at the end, where they must make extensive use of dangerously caustic and toxic materials, and are compelled by circumstances, including vital considerations of health and hygiene, to change clothes and to shower in facilities which state law requires their employers to provide[.]" 350 U.S. at 248-49 (stressing the health and safety risks associated with battery production); *see also Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956) (holding time meatpacking workers spent sharpening the knives compensable because, among other things, a dull knife would "make for accidents."). As one court in this Circuit explained post-*Integrity Staffing*:

> *Steiner* and *Mitchell* teach that protective gear required by an employer in order to prevent workplace injuries is "integral" to an employee's job where the regular conditions of the workplace make the risk of injury an obstacle to the safe and efficient performance of an employee's job duties.

*Lee v. Dana Inc.*, No. 3:23-cv-2072, 2024 WL 4349402, at *4 (N.D. Ohio Sept. 30, 2024). Similarly, a court in the Middle District of Tennessee explained:

14

> If Plaintiffs were merely traveling to their "actual place of performance of the principal activit[ies]" before beginning any work activity, then section 254(a)(1) exempts such travel from compensation under the FLSA. But, if Plaintiffs, by retrieving their work tools, are engaging in work-related activity that is "integral and indispensable" to their work, then any travel afterwards is compensable.

*Alvarado v. Skelton*, No. 3:16-3030, 2017 WL 2880396, at *4 (M.D. Tenn. July 6, 2017); *see also Tyger v. Precision Drilling Corp.*, 78 F.4th 587, 594 (3d Cir. 2023) ("For an activity to be indispensable, Supreme Court precedent suggests that it need not be strictly necessary, just reasonably so.") (citing *Steiner*, *Mitchell*, and *Integrity Staffing*).

### 2. Section 203(o) of the FLSA Excludes Changing Clothes at the Beginning and End of the Workday from Compensable Time under Certain Circumstances.

Section 203(o) excludes from compensable "Hours Worked": "any time spent in changing clothes or washing at the beginning or end of each workday" if "excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee." 29 U.S.C. § 203(o). But for Section 203(o) to apply, there must be an applicable collective bargaining agreement and either the express terms of the agreement or custom and practice under the agreement must exclude clothes changing or washing time. *Id.* Additionally, under Section 203(o), "clothes" means "items that are both designed and used to cover the body and are commonly regarded as articles of dress." *Sandifer*, 571 U.S. at 227-32. And "changing" includes "time spent in altering dress." *Id.*

### 3. *Franklin* Holds that Whether Activities are Principal Activities that Trigger the Continuous Workday is not Dependent on Compensability Under Section 203(o).

*Franklin* fits neatly within the legal history and rules discussed above. At issue in *Franklin* was whether donning, doffing, and walking time were compensable. *See generally Franklin*, 619 F.3d 604. In resolving the issue, the Sixth Circuit answered two separate questions: (1) whether donning and doffing was excluded by custom or practice under a bona fide CBA under Section

15

203(o); and (2) regardless, whether plaintiff was entitled to compensation for walking time under the continuous workday rule. *Id.* at 611, 618-19.

Critically, the court held that the answers to the two questions were not dependent on each other. That is, the court unambiguously stated, "***compensability under § 203(o) is unrelated to whether an activity is a 'principal activity.'***" *Id.* at 619 (emphasis added). In other words, whether donning and doffing is a "principal activity" that triggers a continuous workday is not dependent on the donning and doffing time being compensable under Section 203(o). *Id.*

**B. The Relevant Holding in *Franklin* is Binding Law that Neither *Sandifer* nor *Integrity Staffing* Overruled.**

For its part, "CNS ***does not*** assert that either decision [*Sandifer* or *Integrity Staffing*] expressly overruled *Franklin's* holding that 'compensability under § 203(o) is unrelated to whether an activity is a 'principal activity.'" (Def. Br., ECF No. 30 at PageID #1502 (quoting *Franklin*, 619 F.3d at 619) (emphasis added).)[5] Yet, CNS argues that this Court should hold otherwise because, according to CNS, clothes changing excluded by § 203(o) can never be integral and indispensable to a principal activity nor commence the continuous workday. CNS is wrong because: (1) neither *Sandifer* nor *Integrity Staffing* overruled the portion of *Franklin* discussed above; (2) courts in this Circuit have issued opinions consistent with *Franklin* even after *Sandifer* and *Integrity Staffing*; and (3) *Franklin's* reasoning remains sound.

**1. Neither *Sandifer* nor *Integrity Staffing* overruled *Franklin's* relevant holding.**

In *Sandifer*, the Supreme Court explained, "[t]he question before [it] is the meaning of the phrase 'changing clothes' as it appears in the [FLSA]." 571 U.S. at 222. The Court did not address

---

[5] For this reason, CNS's reliance on *United States v. Wehunt* is misplaced. 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) ("This Court certainly has an obligation to follow the Supreme Court where an intervening decision of that Court ***directly reverses*** an opinion of the Sixth Circuit or ***implicitly reverses*** same through ***a case with indistinguishable facts***.") (emphases added).

whether a conclusion under Section 203(o) matters to whether the continuous workday rule applies. *See generally id.* Rather, *Sandifer* simply recognized the unchanged existence of the continuous workday rule and reiterated the Court's holdings in both *Steiner* and *IBP*. *Id.* at 226-227. Notably, *Sandifer* did not involve or address walking or waiting time. *See id.* at 224 ("That issue is not before this Court, so we express no opinion on it."); *see also Dekeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-c-0488, 2014 WL 6682446, at *4 (E.D. Wis. Nov. 25, 2014) ("*Sandifer* contains no discussion of the circumstances under which the nature of the work require[s]changing . . . on site . . . . *Sandifer* is inapposite to the issue raised here[.]").

*Integrity Staffing* is equally inapplicable to the parties' dispute over *Franklin*. *Integrity Staffing* contains absolutely no reference to Section 203(o) or whether Section 203(o) is determinative of whether the continuous workday rule applies. *See generally Integrity Staffing*, 574 U.S. 27. As to its actual holding, Plaintiffs do not dispute that *Integrity Staffing's* definition of "integral and indispensable" is the definition courts must apply, i.e., "an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 37.

So, there is no reason to hold that *Sandifer* or *Integrity Staffing* overruled *Franklin*.

### 2. Courts in this Circuit have issued opinions consistent with *Franklin* after *Sandifer* and *Integrity Staffing*.

As CNS acknowledges, "decisions from other courts of appeals do not amount to authority to disregard published Sixth Circuit precedent." (Def. Br., ECF No. 30 at PageID #1502.)[6] At the

---

[6] For this reason, this Court is not required to follow the opinions that CNS cites from other courts of appeal. (*See* Def. Br., ECF 30 at PageID #1501 (citing the Seventh Circuit's opinion in *Sandifer*, as well as *Castenada v. JBS USA, LLC*, 819 F.3d 1237, 1248-49 (10th Cir. 2016) and *Adair v. ConAgra Foods, Inc.*, 728 F.3d 849, 852 (8th Cir. 2013)).)

17

same time, CNS does not point to any Sixth Circuit authority overruling the relevant holding in *Franklin*. In truth, even after *Sandifer* and *Integrity Staffing*, courts within the Sixth Circuit have considered the question of principal activity distinct from whether time is compensable under Section 203(o). *See e.g., Butler v. Adient US LLC*, No. 3:20-cv-2365, 2021 WL 490243, at \*2 (N.D. Ohio Feb. 10, 2021) (dismissed donning and doffing claim pursuant to Section 203(o) but allowing amendment to pursue walking and waiting times); *see e.g., Howard v. Post Foods, LLC*, No. 1:19-cv-570, 2022 WL 4233221, at \*16 (W.D. Mich. Sept. 14, 2022); *Howard v. Post Foods, LLC*, No. 1:19-cv-570, 2021 WL 194036, at \*3-\*4 (W.D. Mich. Jan. 20, 2021) (holding clothes changing is excluded under the CBA ***and also*** holding that "washing and taking other measures to prevent contamination in the production building are integral and indispensable to Plaintiffs' work producing cereal that is safe for human consumption."); *see also Montano v. Allen Harim Foods, LLC*, No. 15-cv-392-LPS-CJB, 2017 WL 3328360, at \*7 (D. Del. Aug. 4, 2017) (Section 203(o)'s adoption, then, provided for ***a separate way*** that changing clothes could be excluded from the calculation of hours worked pursuant to the FLSA.") (citing *Sandifer*) (emphasis added) *report and recommendation adopted sub nom. Montano v. Allen Harim Foods, LCC*, No. 15-cv-392-LPS-CJB, 2017 WL 4162177 (D. Del. Sept. 20, 2017). This Court should not depart from these cases.

### 3. *Franklin's* Reasoning is Sound.

In the absence of binding authority for its position, CNS turns to *Franklin's* reasoning and the cases upon which it relies to argue that it has been indirectly overruled by the reasoning in *Sandifer* and *Integrity Staffing*. *Gor v. Holder*, 607 F.3d 180, 188 (6th Cir. 2010). According to CNS, *Franklin*'s reasoning is flawed, and thus has been indirectly overruled, because it assumes Section 203(o) does not analyze whether an activity is integral and indispensable. (Def. Br., ECF No. 30 at PageID #1502-05.) CNS is wrong again.

18

*First*, by CNS's own admission, "*Sandifer* made it clear that § 203(o) applied only when clothes changing was a principal activity[.]" (Def. Br., ECF No. 30 at PageID #1504.) And a principal activity is one that is integral and indispensable. *See supra* at Pt. II.A.1. So, Section 203(o) cannot apply unless changing clothes is integral and indispensable. *Franklin* does not contradict this. Rather, it simply states that even if such an activity is not compensable under 203(o), it may be a principal activity for the purpose of the continuous workday. 619 F.3d at 620 ("Accordingly, under the continuous workday rule, Franklin may be entitled to payment for her post-donning and pre-donning walking time.").[7]

*Second*, CNS argues that Section 203(o) does not change the nature of an activity. (Def. Br., ECF No. 30 at PageID #1504.) Neither Plaintiffs nor *Franklin* contend that it does. Rather, the entire point of Section 203(o) is to exclude certain hours worked from compensation **despite** their nature. As one court put it, "[l]ogically, whether an activity counts as 'changing clothes' under § 203(o) does not necessarily affect whether it is a principal activity." *Arnold v. Schreiber Foods, Inc.*, 690 F. Supp. 2d 672, 684–85 (M.D. Tenn. 2010) (going on to explain that Section "203(o), by its terms, applies only to clothes changing that occurs at the beginning or end of each workday. This implies that such activities are work and that the continuous-work-day clock has already started to run.") (internal quotations omitted). "In other words, the *character* of donning and doffing activities is not dependent upon whether such activities are excluded pursuant to a collective-bargaining agreement." *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *20 (W.D. Pa. Sept. 3, 2008) (emphasis in original); *see Franklin*, 619 F.3d at 618 (citing *Figas*).

---

[7] *Andrako*, *Tyson*, *Figas*, and *Gatewood*, upon which *Franklin* relies, are consistent. *See Andrako v. U.S. Steel Corp.*, 632 F. Supp.2d 398, 413 (W.D. Pa. 2009); *In re Tyson Foods, Inc.*, 694 F. Supp.2d 1358, 1371 (M.D. Ga. 2010); *Figas v. Horsehead Corp.*, No. 06-1344, 2008 WL 4170043, at *20 (W.D. Pa. Sept. 3, 2008); *Gatewood v. Koch Foods of Miss., LLC,* 569 F. Supp.2d 687, 702 (S.D. Miss.2008).

19

*Third*, CNS argues that *Franklin*'s reasoning is wrong because Section 203(o) is meant to provide negotiated certainty to an employer through a CBA. (Def. Br., ECF No. 30 at PageID #1506-07.) But Section 203(o) says nothing about negotiating payment for walking or waiting time, only "changing clothes or washing at the beginning or end of each workday[.]" 29 U.S.C. § 203(o). This plain language does not make activities between changing clothes or washing and starting one's shift non-compensable. Nor does it make activities between ending one's shift and changing clothes or washing non-compensable. *See Johnson v. Koch Foods, Inc.*, 670 F. Supp. 2d 657, 670 (E.D. Tenn. 2009) ("[I]f the donning, doffing, and washing excluded by § 203(o) are determined by the trier of fact to be integral and indispensable, those activities could commence the workday."). So, there is no statutory ground to hold that Section 203(o) somehow precludes the walking and waiting time at issue here.

For all of these reasons, the Court should reject CNS's view of *Franklin* and relationship between the continuous workday rule and Section 203(o). *Franklin* remains binding precedent.

**C. The Court Should Not Certify this Case for Interlocutory Review.**

Seemingly recognizing that its arguments are doomed to fail, CNS makes a perfunctory request for this Court to certify the issue for interlocutory review. This Court should not do so.

A district court may certify an order for interlocutory appeal if it involves a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. 1292(b). District courts also have "broad discretion to deny certification even where the statutory criteria are met." *United States ex rel. Griffis v. EOD Tech., Inc.*, No. 3:10-cv-204, 2024 WL 4920597, at *2 (E.D. Tenn. Sept. 19, 2024) (internal quotations and citation omitted). In fact, "[r]eview under § 1292(b) is granted sparingly and only in exceptional cases."

*Thul v. United States Dep't of the Interior,* No. 1:23-cv-165, 2024 WL 6191048, at *1 (E.D. Tenn. July 22, 2024) (quoting *In re City of Memphis*, 293 F.3d at 350). "Further, 'doubts regarding appealability should be resolved in favor of finding that the interlocutory order is not appealable.'" *Id.* (quoting *United States v. Stone*, 53 F.3d 141, 143–44 (6th Cir. 1995)).

Here, CNS has not shown all three factors are present. Even if there was substantial ground for difference of opinion, there is no controlling question of law that would materially advance the termination of litigation. CNS itself acknowledges that a controlling question of law only exists for the purpose of making interlocutory appeals when there are "no facts in dispute." (Def. Br., ECF No. 30 at PageID #1508.) But here, disputed facts surround which activities were preliminary and postliminary. Moreover, whether donning and doffing even falls within Section 203(o) is dependent on facts yet to be discovered—namely, the presence of a custom or practice under the CBA. If discovery shows there is no custom or practice, then there would be no need to determine whether walking and waiting time is compensable. In short, "[t]his case-specific inquiry does not present a question of law but a mixed one of law and fact . . . . Nor does the inquiry involve 'the sort of ephemeral questions of law that might disappear in the light of a complete and final record' for which § 1292(b) was designed." *Strobl v. Croft,* No. 1:24-cv-140, 2025 WL 1106067, at *4 (E.D. Tenn. Apr. 14, 2025) (internal citations and quotations omitted). Similarly, the facts and law surrounding the CBA would have to be litigated even if Plaintiffs had no walking or waiting time claims, meaning an interlocutory appeal would not materially advance the termination of litigation. *See id.* at *5 (citing *Jackson Cnty. Employees' Ret. Sys.*, No. 3:18-cv-01368, 2021 WL 2400302, at *5 (M.D. Tenn. June 11, 2021), in turn citing *In re City of Memphis*, 293 F.3d at 351 for the proposition that "when litigation will be conducted in substantially the same manner regardless of the court's decision, the appeal cannot be said to materially advance the ultimate termination of the

litigation."). Interlocutory review is unwarranted.

## II. CNS HAS NOT MET ITS BURDEN OF PROVING THERE ARE NO GENUINE ISSUES OF MATERIAL FACT FOR ANY PLAINTIFF IN THIS CASE.

### A. CNS Has Not Proven that the Continuous Workday Rule Does Not Apply to Any Plaintiff in this Case.

Without having produced the JHAs relevant to this case, without citing evidence specific to any Plaintiff in this case, and while ignoring safety data sheets which highlight the integral and indispensable nature of Plaintiffs' clothes changing, CNS argues that it is entitled to summary judgment on Plaintiffs' walking and waiting time claims. Judgment on those claims, however, will depend on the actual evidence in this case and whether it shows that any donning that occurs before a shift and any doffing that occurs after a shift are integral and indispensable to Plaintiffs' work in CNS's nuclear weapons production facility.

Here, at the very least, there is a fact question on this point given the presence of beryllium, asbestos, enriched uranium, and other hazardous materials. *See supra* at Background, Pt. II.A.; *see also* Def. Br., ECF No. 30 at PageID #1498, n.7 (pointing out that Y-12 is a protected area with "special nuclear material," which generally means plutonium, uranium enriched in the isotope 233 or in the isotope 235.). CNS is not entitled to summary judgment on whether donning and doffing protective clothing and equipment is integral and indispensable to the jobs. As a sister circuit succinctly put it:

> Many of us, including judges, wear uniforms at work. But Congress has decided that only some of us get paid for the time we spend changing into and out of those uniforms. The test is whether changing is integral and indispensable to our productive work. We can find out whether the gear is integral by looking at where we change, whether regulations or industry custom require changing into gear at work, and how specialized the gear is. And whether the gear is indispensable depends on whether it is reasonably necessary for doing the work safely and well.

*Tyger*, 78 F.4th at 595. These are fact-bound inquiries. *See e.g., Lee*, 2024 WL 4349402, at *4

22

(denying motion to dismiss where employee alleged that employer "eliminated [changing into and out of PPE] altogether without impairing the employees' ability to complete their work.") (quoting *Integrity Staffing*, 547 U.S. at 35) (citing *Franklin,* 619 F.3d at 620); *Kendall v. Yamada N. Am., Inc.*, No. 3:26-cv-12, 2026 WL 1730071, at \*6 (S.D. Ohio June 16, 2026) (denying motion to dismiss where "Kendall clearly alleges that the uniform and protective gear he donned and doffed protected him from a variety of burns, chemical hazards, mechanical hazards, and dangerous pathogens[,]" and stating, "Based upon this assertion, the Court can plausibly infer that to dispense with the Yamada uniform would subject employees to conditions which would make it impossible for technicians like Kendall to perform their principal duties safely."); *Duncan-Watts v. Nestle USA, Inc.*, No. 1:19-cv-01437, 2020 WL 589042, at \*3 (N.D. Ohio Feb. 5, 2020) (denying motion to dismiss where employee alleged "she could not complete her work unless she was wearing the sanitary clothing and protective equipment required by law[,]" and stating "[f]urther discovery may or may not establish that donning and doffing was truly integral and indispensable to plaintiff's job duties."); *see also Steiner,* 350 U.S. at 252-253; *Mitchell*, 350 U.S. at 262; *Alvarado*, 2017 WL 2880396, at \*4.

As to security screening and other miscellaneous activities, *Integrity Staffing* does not automatically mean these Plaintiffs' activities are not integral and indispensable. Granted, *Integrity Staffing* applied its definition of "integral and indispensable" to find that time waiting to undergo security screening was not compensable. *Id.* But it did so by analyzing the actual job at issue and evidence in that case. *See generally id*. It did not apply a brightline rule that waiting time and/or security screening can never be compensable. As one court in this Circuit explained:

> The Supreme Court's focus was on what the employees were hired to do, *i.e.* retrieve and package products, not the physical ability of the employees to complete their jobs without the screening. Moreover, the activities at issue in *Integrity Staffing* were wholly unrelated to the performance of the employees' tasks – the

employees had completed their job duties and underwent an anti-theft screening process as they left their employer's warehouse . . . . By contrast, donning and doffing protective gear to keep food sanitary is linked with the performance of plaintiff's job duties of food manufacturing and packaging.

*Duncan-Watts*, 2020 WL 589042, at *4. So, too, here where a reasonable factfinder could easily conclude that donning and doffing protective clothing is integral and indispensable to working at a nuclear weapons facility.

To the extent CNS claims that it paid any one of the Plaintiffs in this case for all of their compensable waiting and walking time, including time spent undergoing security screenings and completing other pre- and post-shift activities, it has not proven so. Indeed, CNS has not cited to or attached payroll or timekeeping records for any one of the 673 Plaintiffs and, instead, relies on generalizations from the *Hutzler* case to claim the Plaintiffs here were paid. (*See generally* Def. Br., ECF No. 30.) CNS has not met its burden.

### B. CNS Has Not Proven that There are No Genuine Disputes of Material Fact Surrounding the CBA or Any "Custom or Practice" of Excluding Donning and Doffing Time.

As to donning and doffing, CNS has not proven that it paid any one of the Plaintiffs in this case for all of their pre- and post-shift donning and doffing time. Rather, CNS only cites the *Hutzler* record and not any pay or timekeeping data for the Plaintiffs in this case. (*See generally* Def. Br., ECF No. 30.) CNS cannot avoid its failure by claiming the Plaintiffs have no evidence. Plaintiffs are not the moving party; CNS is.

CNS actually concedes that "the CBA did not expressly address whether employees were paid to change clothes before the shift" prior to the *Hutzler* settlement in 2024. (Def. Br., ECF No. 30 at PageID #1493.) Beyond that, CNS does not actually engage with the evidence, incomplete as it may be at this point. At best for CNS, it may have generally discussed post-shift doffing, which should be explored further in discovery, and there is no clarity in the existing record as to

24

pre-shift donning. (*See generally* Srey Decl.)

Finally, this is not the type of dispute that is so intertwined with the CBA that it must be decided through a grievance procedure and then arbitration. Arbitration ***may*** be appropriate where an FLSA claim "depends on the disputed interpretation of a CBA provision[.]" *Jones v. Does 1-10*, 857 F.3d 508, 512 (3d Cir. 2017). Here, the FLSA claims are not dependent on how to interpret the CBA. Rather, the questions are factual: which CBA versions are applicable to these Plaintiffs, what do the express terms say, and what if any custom or practice followed. This sets CNS's cited cases apart. *See Jones*, 857 F.at 508 (discussing the history and application of the three cases CNS cites here: *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737 & n. 19 (1981); *Vadino v. A. Valley Engineers*, 903 F.2d 253 (3rd Cir. 1990); *Bell v. Southeastern Pennsylvania Transp. Auth.*, 733 F.3d 490, 494 (3rd Cir. 2013)). And in any event, Plaintiffs filed this case almost two years ago, ECF No. 1, and, instead of moving to compel arbitration, CNS moved for summary judgment, thereby "invoking the machinery of litigation" and waiving its arbitration arguments. *See Robinson v. Alston*, 596 F. App'x 871, 873 (11th Cir. 2015); *Parker v. Kearney Sch. Dist.*, 130 F.4th 649, 655 (8th Cir. 2025).

**CONCLUSION**

Summary judgment is procedurally improper, premature, and unwarranted given the numerous fact questions surveyed above. Moreover, *Franklin* remains binding law insofar as it allows for walking and waiting time claims independent of compensability under Section 203(o). CNS has not met its burden on summary judgment or interlocutory review. Accordingly, the Court should deny CNS's motion in its entirety.

Dated: July 28, 2026          Respectfully submitted,

                                          **NICHOLS KASTER, PLLP**
                                          */s/ Rachhana T. Srey*

25

Rachhana T. Srey (pro hac vice)
4700 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
srey@nka.com

Jennifer B. Morton (BPR #015585)
Summer H. McMillan (BPR # 020296)
Cheyenne E. Peters (BPR # 043189)
**JENNIFER MORTON LAW, PLLC**
8217 Pickens Gap Road
Knoxville, TN 37920
(865) 579-0708
jen@jmortonlaw.com
summer@jmortonlaw.com
cheyenne@jmortonlaw.com

Gary Ferraris (BPR #016086)
333 Huxley Road
Knoxville, TN 37922
(865) 256-3515
gferraris@ferrarislaw.com

26

## <u>Certificate of Service</u>

I hereby certify that on July 28, 2026, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel specified on the electronic filing receipt.

*/s/ Rachhana T. Srey*
Rachhana T. Srey

Case 3:24-cv-00436-KAC-JEM    Document 40    Filed 07/28/26    Page 27 of 27
PageID #: 1569