**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| Jacob Gardner, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No: 3:24-cv-00436-KAC-JEM |
| | ) | |
| Consolidated Nuclear Security, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSOLIDATED NUCLEAR SECURITY, LLC'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Consolidated Nuclear Security, LLC (CNS) files this reply in support of its Motion for Summary Judgment. For the reasons stated herein and the record as a whole, CNS moves the Court to grant summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Both the Portal-to-Portal Act and *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014), define a "principal activity" as one that an "employee is employed to perform." 574 U.S. at 33-36, (citing 29 U.S.C. § 254(a)).[1] Section 203(o) of the Fair Labor Standards Act permits an employer - here CNS - and a union - here the Atomic Trades and Labor Council (ATLC) - to agree (or have a custom or practice) that governs whether time spent changing clothes "shall be excluded" from the "hours for which an employee is employed," via their Collective Bargaining Agreement (CBA).

Despite the clear parallel between Section 203(o) and the definition of principal activities, *see* R.30, Page ID #: 1505, Plaintiffs argue that § 203(o) should narrowly be interpreted to mean

[1] A principal activity includes "all activities that are an integral and indispensable part of the principal activities, 574 U.S. at 36, and CNS will usually shorten this to "principal activities."

"compensable."[2] Under their theory, even if § 203(o) permits excluding time spent changing clothes from "hours for which an employee is employed" that time can still be a "principal activity" that commences the workday and requires time after changing clothes be paid even though § 203(o) does not require paying employees to change clothes. This result Plaintiffs say, is required by *Franklin v Kellogg Co*., 619 F.3d 604 (6th Cir. 2010). But CNS provided reasons why *Franklin* is not consistent with *Integrity Staffing* and *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 226 (2014). Plaintiffs largely ignore these reasons.

CNS described the Plaintiffs' six different alleged FLSA violations as follows:

- "miscellaneous work activities;"
- before shift "waiting time and walking time;"
- end of shift "waiting time and walking time;"
- work activities that expose Plaintiffs to "substantial hazards;"
- clothes changing before the designated starting time; and
- clothes changing after the designated quitting time.

CNS is entitled to summary judgment on Plaintiffs' claims for end of shift clothes changing even if that changing occurred after the designated quitting time because the undisputed evidence establishes CNS paid Plaintiffs to change clothes before the shift ended, and § 203(o) prohibits Plaintiffs from basing an FLSA action on the contention that CNS failed to abide by the express agreement as discussed in Part III.B. In Part III.C, CNS explains that Plaintiffs have effectively conceded that if there is a custom or practice governing clothes changing before the shift, *Franklin* means they cannot recover overtime for time spent changing clothes. Plaintiffs made no

[2] *But see Sandifer v U.S. Steel Corp.*, 571 U.S. 220, 232 n.7 (2014) (holding the "narrow construction principle inapplicable" to the definitions in § 203).

meaningful effort to defend their "miscellaneous" and "substantial hazards" claims. Those claims have been forfeited as discussed in Part III.D.

With regard to Plaintiffs' "walking and waiting time" for before the shift, CNS sought summary judgment on based solely on *Franklin* being irreconcilable with *Sandifer* and *Integrity Staffing*. Plaintiffs' contrary arguments contradict their Complaint,[3] ignore *Sandifer*, and the undisputed facts, as addressed in Parts II.A and II.B. Plaintiffs oppose certifying an interlocutory appeal on the ground that the Court should deny CNS summary judgment on all of Plaintiffs' claims. CNS argued the Portal-to-Portal Act barred the claim for walking after the shift has ended, and Plaintiffs failed to contradict this or explain why they should be paid for this time as addressed in Part II.C.

## I. Plaintiffs' procedural arguments lack merit.

### *A. Plaintiffs ignore settled summary judgment standards and the burden of proof.*

Plaintiffs repeatedly argue CNS has not met its "summary judgment burden" to "prove there are no disputes of material fact[,]" [R.40, Page ID #: 1547-48, 1554, 1564, 1566, 1567], but a moving party can challenge the nonmoving party (who has the burden of persuasion) to "put up or shut up," upon the filing of their motion for summary judgment, *see Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Plaintiffs have the "burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1018 (6th Cir. 2024).[4]

---

[3] The Amended Complaint will be referred to as the Complaint. [R.22]

[4] Even though the burden of proving damages might be "lightened" in some instances that are not relevant here, neither *Anderson* nor *Parker* "lessen the standard of proof for showing that a FLSA violation occurred." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 602 (6th Cir. 2009).

Contrary to Plaintiffs' position, CNS need not "negate the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 110 (6th Cir. 1989).

Plaintiffs must set forth specific, admissible facts that establish a genuinely disputed fact on at least one essential element of each of their claims. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990) ("[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.").

Plaintiffs criticize CNS for relying on deposition testimony from *Hutzler* plaintiffs but failed to cite any authority making this improper. [R.40, Page ID #: 1547.] These conclusory assertions cannot be reconciled with Plaintiffs' Complaint, which alleged the Plaintiffs are "similarly situated to the plaintiffs in *Hutzler*" and that they "make *identical allegations*" as the *Hutzler* plaintiffs. [R. 22, ¶ 24-25, PageID #: 770 (emphasis added).] CNS may rely on this binding admission to explain the "identical allegations" both plaintiff groups have made. *See Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980).

### ***B. Plaintiffs failed to establish CNS's motion was premature or that additional time for discovery is "essential" to opposing CNS's motion.***

Plaintiffs argue CNS's motion is premature, but they fail to show the desired discovery is essential to opposing the summary judgment motion.

Federal Rule of Civil Procedure 56(b) provides that unless "a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Plaintiffs cite the Court's Scheduling Order [R.13], but CNS submits that if the Court had intended to prohibit the parties from filing dispositive motions until Phase Two, it would have said so expressly. CNS's summary judgment motion

promotes efficient case management by giving the Court the opportunity to decide what, if any, of Plaintiffs FLSA claims survive as a matter of law before having to resolve whether and how to sever the Plaintiffs' claims. [R.30, Page ID #: 1508.]

Plaintiffs invoke Rule 56(d) which requires the nonmoving party to show that "it cannot present facts essential to justify its opposition." To properly invoke Rule 56(d), a "party must clearly explain how the additional discovery will shed further light on the issues relevant to summary judgment, demonstrating that for specified reasons, she cannot present facts essential to justify her opposition." *Brockington v. Hume Health, LLC*, No. 3:25-CV-161-KAC-DCP, 2026 WL 1284850, at *2 (E.D. Tenn. May 11, 2026) (Crytzer, J.) (cleaned up). "A party opposing summary judgment possesses no absolute right to additional discovery." *Id*. (*quoting Emmons v. McLaughlin*, 874 F.2d 351, 456 (6th Cir. 1989)). Postponement is not necessary where the desired discovery is within the nonmovant's personal knowledge. *Emmons,* 874 F.2d at 456.

Plaintiffs argue that CNS has not yet provided "job hazard analysis" (JHA) documents but they cannot establish these documents are "essential."[5] Plaintiffs assert JHAs will prove that changing clothes before the shift is integral and indispensable to their principal activities.[6] [R.40 Page ID #: 1564, 1550, 1553; see also R.40-1, Srey Decl. ¶ 7, 9, Page ID #: 1572.] CNS has not

[5] JHA's address five elements: define the scope of work; analyze the hazards and risks; define and implement health and safety measures and controls; perform work within measures and controls; feedback for continuous improvement. [R.40-43, Page ID #: 2921 to 2923.] JHAs are not unique to CNS. *See Jolly v. Dynegy Miami Fort, LLC*, No. 1:17-CV-00392, 2020 WL 6591410 (S.D. Ohio Nov. 10, 2020), *aff'd,* 861 Fed. Appx. 628 (6th Cir. 2021).

[6] During the relevant period, there were well over a thousand JHAs. Before they can be provided each JHA must be reviewed for Unclassified Controlled Nuclear Information (UNCI) (defined by 10 C.F.R. § 1017.8). Department of Energy regulations control access to UCNI. 10 C.F.R. § 1017 subparts D and E. Plaintiffs know this. A recent joint motion explained that each JHA would have to be reviewed for UCNI. [R.34 Page ID #: 1518.]

sought summary judgment on this issue[7] so the desired discovery cannot be "essential" to opposing CNS's motion. A "district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019); *Green v. Nevers*, 196 F.3d 627, 632 (6th Cir. 1999). And in *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004), the Sixth Circuit affirmed this Court's summary judgment decision that the statute of limitations barred the claims over the plaintiffs' assertion that they needed discovery on the merits of their claim.

A declaration from counsel must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Ball*, 385 F.3d at 720 (*quoting Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). Plaintiffs' counsel's declaration maintains Plaintiffs "do not have sufficient discovery regarding whether there exists a custom or practice" regarding "compensation for donning and doffing." [R.40-1, Srey Decl. ¶ 7, 10 Page ID #: 1572.] Plaintiffs, however, failed to make this argument in their opposition brief and that alone is grounds to deny request for additional discovery on this issue. Local Rule 7.1(a) requires a brief to "include a concise statement of the factual and legal grounds which justify the ruling sought." E.D. Tenn. L.R. 7.1(a). On summary judgment the Court has no obligation to search the record to locate Plaintiffs' arguments. *See Kelly v. Cheeseman, LLC*, No. 3:22-CV-237-TAV-DCP, 2025 WL 2922882, at *2 (E.D. Tenn. July 28, 2025) (*citing Street*, 886 F.2d at 1479-80).

Counsel's conclusory assertions fall far short of the specificity required by Sixth Circuit precedent. "The importance of complying with Rule 56[(d)] cannot be overemphasized." *Cacevic*,

[7] To be clear, CNS does not concede clothes changing is integral and indispensable for every Plaintiff but that is an issue for a later time as is the accuracy of Plaintiffs' discussion of the "numerous hazards" they work around. [R.40 Page ID #: 1549.]

226 F.3d at 488. In *Doe*, 928 F.3d at 491, the Sixth Circuit held that the district court should consider five factors:

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

Plaintiffs have long known CNS relied on § 203(o) because their original complaint alleged § 203(o) did not apply and that CNS disputed this. [R.1, Page ID #: 10; R.6, Page ID #: 700.][8] Plaintiffs knew CNS's position on the validity of *Franklin* because CNS's second affirmative defense asserted clothes changing did "not constitute work or compensable time." [R.6, Page ID #: 705.] In addition, the motion to approve the *Hutzler* settlement explained a settlement would avoid having to resolve whether *Franklin* has been overruled.[9] [R.34, Page ID #: 910 n. 5 in Case 3:21-cv-00304.] No discovery is needed about whether *Franklin* has been overruled because that is purely a legal issue.

As to changing the ruling, Plaintiffs argue they need discovery on JHAs, but Plaintiffs' description of why establishes that JHAs are irrelevant to the grounds asserted in CNS's summary judgment motion. Plaintiffs' counsel asserts that Plaintiffs have "not had the opportunity" to depose CNS's Labor Relations Manager about the custom or practice. [R.40-1, ¶ 7, Page ID #: 1571-72.] But declarations must specifically describe the "material facts it hopes to uncover," *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 863 (6th Cir. 2005), and why Plaintiffs "could not oppose the summary judgment motion" without the discovery. *Emmons*, 874 F.2d at 357; *accord Doe*, 928 F.3d at 494. In *Brockington*, this court denied a nearly identical argument

[8] CNS cites the original complaint and answer instead of the amended pleadings to show when Plaintiffs learned of the issues.

[9] At least two of the attorneys representing Plaintiffs represented the *Hutzler* plaintiffs.

because the plaintiff failed to identify the material facts she hoped to uncover in a deposition and failed to clearly explain how additional discovery would "shed further light" on the information the defendant had already provided. 2026 WL 1284850 at *2. *Franklin* adopted two factors that govern whether there is a custom or practice. [R.30 Page ID #: 1493.] Plaintiffs do not assert they lack personal knowledge of these factors but in fact cited grievances and testimony confirming the absence of any disputed fact on either factor. [R.40, Page ID #: 1550-51.]

Plaintiffs' diligence "in pursuing discovery" is an important factor. *Doe,* 928 F.3d at 491. CNS filed its summary judgment motion on February 9, 2026, some 470 days after Plaintiffs filed their Complaint. [R.29; R.1] Plaintiffs admit there has been merits discovery. [R.40-1 Srey Decl. ¶ 8, Page ID #: 1572.] Plaintiffs propounded two sets of discovery requests to CNS, but they have not been diligent in seeking discovery on the custom or practice issue. Plaintiffs do not assert that either set of discovery requests sought discovery on the custom or practice issue or that CNS refused to provide the discovery.[10] Plaintiffs have also not been diligent in requesting a deposition. Plaintiffs do not assert they asked CNS to schedule a deposition or that CNS refused to do so.[11]

For these reasons, the Court should deny Plaintiffs' Rule 56(d) motion.

## II. Plaintiffs failed to establish any genuine dispute of material fact.

### *A. Plaintiffs failed to meet their burden to establish there was no custom or practice governing time spent changing clothes before the shift.*

Plaintiffs cannot prove there was no custom or practice under 29 U.S.C. § 203(o) governing clothes changing time before the shift. [R.30, Page ID #: 1491-93.] Plaintiffs bear the burden of

---

[10] *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 323 (N.D. Ill. 2005) ("for on the question you ask depends the answer you get").

[11] CNS agreed to Plaintiffs' extension request(s) and Plaintiffs had ample time to schedule and conduct a deposition before filing their response if they believed it was necessary. Instead, Plaintiffs took the calculated risk that it is better to argue they need more time than request to take the deposition.

proving that § 203(o) does not apply, 619 F.3d at 612-13, but they offered no evidence disputing that the custom or practice had not been in effect for a significant period of time or that the Union was unaware of the practice. *Franklin*, 619 F.3d at 617-18.[12]

Plaintiffs fail to apply the criteria *Franklin* adopted. Plaintiffs cited the testimony of "Chief Steward Hutzler [who] testified that he attempted to discuss pre-shift changing time during CBA negotiations but was told that the topic could not be discussed because it was 'out of bounds.'" [R.40-17, Page ID #: 1916-17.][13] Plaintiffs do not explain why this testimony supports their position. On the contrary, Mr. Hutzler's testimony established that paying for time spent changing clothes before the shift "has been brought up with the [ATLC] council before through grievance and discussion *throughout my 15 years at the plant*." [R.40-17, Page ID #: 1917 (emphasis added).] The ATLC had "fought it and we haven't accomplished anything yet." [*Id.*] This testimony unambiguously establishes the ATLC was aware of the longstanding practice.

Plaintiffs' argument that CBA does not "conclusively establish" a custom or practice is misplaced. [R.40, Page ID #: 1550-51.] The plain language of § 203(o) which permits *either* an express agreement *or* a custom or practice. Plaintiffs' argument that the CBA must "conclusively establish" a custom or practice cannot be reconciled with *Franklin* which held the "unwritten" custom or practice excluded time spent changing clothes from hours worked. 619 F.3d at 616. Plaintiffs cannot meet their burden of proving there was no custom or practice.

Plaintiffs try to get around § 203(o) by arguing that they did not merely change into clothes, but this position requires ignoring *Sandifer*. Plaintiffs repeatedly argue they put on "*protective*

---

[12] The Sixth Circuit Court of Appeals rejected the argument that "a prolonged period of acquiescence was required to show a custom or practice." 619 F.3d at 617 n. 5.

[13] Mr. Hutzler did not actually say he brought up the subject "during CBA negotiations" or that CNS said the subject was "out of bounds." [R.40-17, Page ID #: 1917.]

clothing." [R.40, Page ID #: 1548.] *Sandifer* specifically rejected the argument that the definition of clothes should omit "protective clothing." 571 U.S. at 228.

Plaintiffs devote two pages to describing the supposed "protective clothing and equipment" that the *Hutzler* plaintiffs described changing into before the shift.[14] [R.40, Page ID #: 1547-48.] Plaintiffs imply that "flame resistant" clothes are not clothes, but *Sandifer* held that a "flame-retardant jacket . . . . clearly fit" the definition of clothes.[15] 571 U.S. at 233. Thus, clothes that have a flame-resistant coating are still clothes. Plaintiffs noted they also wear "composite toed boots" but these are "metatarsal boots" which *Sandifer* said were "just a special kind of shoe."[16] *Id.* Plaintiffs cannot defeat summary judgment by asking the Court to disregard *Sandifer's* definition of "clothes."

Plaintiffs also cited testimony that a *Hutzler* plaintiff said he wore a "belt" (which plaintiffs characterize as an "accessory") but suggesting that belts are not clothes cannot be reconciled with *Sandifer* which simply held that "many accessories" are not clothes. 571 U.S. at 230 & n. 6. Again, *Sandifer* held clothes are "items that are both designed and used to cover the body and are commonly regarded as articles of dress." 571 U.S. at 227-28. Plaintiffs failed to meet their burden

[14] Plaintiffs criticize CNS for making "much" of testimony by Chemical Operator Griffith they offered no evidence that his testimony markedly differed from other *Hutzler* plaintiffs on the cited subjects. CNS cited his testimony twice to authenticate photos of the company provided "clothes. [R.30, Page ID #: 1489 (citing R.28-1 Page ID #: 931-32.)] No *Hutzler* plaintiff disputed this. The third citation explained that Mr. Griffith wanted to be paid for the time after changing out of clothes and before going through the security screening. *Id*. at 1499. Plaintiffs, meanwhile, cited Mr. Griffith's testimony five times.

[15] Plaintiffs deny that flame-resistant clothing is identical to cotton clothing they did not explain why this matters under *Sandifer*. [R.40, Page ID #: 1547.]

[16] "Composite toed boots" are the same as "metatarsal boots." The Seventh Circuit explained that "metatarsal boots" were "work boots containing steel or other strong material to protect the toes and instep." *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 592 (6th Cir. 2012). The Supreme Court endorsed the Seventh Circuit's description. 571 U.S. at 223 n. 2.

of showing that a "belt" does not satisfy this definition. If pants are clothes, an accessory that is commonly used to keep pants around waist level must also be. No decision has held otherwise.

Plaintiffs ambiguously deny that they donned or doffed all required protective clothing *and equipment* on paid time. [R.40, Page ID #: 1458 (emphasis added).] Their denial contradicts the allegations in the Complaint and again ignores *Sandifer*. The Complaint alleged clothes changing was "integral and indispensable to Plaintiffs' principal activities." [R.22, Page ID #: 768, ¶ 15, 16.] Paragraph 18(d) listed the "Defendant-provided clothes" as "flame resistant and/or arc-rated clothing, shirts, pants, coveralls, jackets, raincoats and rain pants, socks, undergarments, safety boots, safety glasses, and other protective clothing" that were allegedly integral and indispensable. [*Id*. at 769.] Except for safety glasses (discussed below), all these items easily satisfy the definition of "clothes" used in *Sandifer*.

The Complaint did not allege putting on "equipment" was an uncompensated principal activity. Plaintiffs' brief does not specifically address the supposed "equipment" they put on without compensation. That omission alone justifies rejecting their argument. *See Murthy v. Missouri*, 603 U.S. 43, 67 n. 7 (2024) ("[J]udges are not like pigs, hunting for truffles buried in the record" (cleaned up)); *accord Brotman v. Univ. of Tennessee*, No. 3:24-CV-472-KAC-DCP, 2026 WL 908940, at *7 (E.D. Tenn. Mar. 31, 2026). Instead, Plaintiffs conflate "protective clothing and equipment" into one broad unfounded category that cannot be reconciled under *Sandifer*. The only items that Plaintiffs have mentioned which would not be "clothes" are "safety glasses" and putting "earplugs around my neck," as one *Hutzler* plaintiff said.[17] *Sandifer* held that when the "vast majority" of the "time [is] spent" changing clothes, the "entire period qualifies" even if employees also put on non-clothes items while changing clothes and time spent putting on other items "need

[17] R.40-3, Page ID #: 1619.

not be subtracted." [R.40, Page ID #: 1546 n. 1 (discussing 571 U.S. at 235).] Even assuming some Plaintiffs put on safety glasses or earplugs, Plaintiffs offered no evidence that putting on glasses or earplugs meant the "vast majority of the time" was not spent putting on clothes.[18]

Plaintiff did not deny CNS's assertion that if employees were "required to put on or remove protective equipment such as respirators or anti-contamination coverings, it is undisputed that they are paid for this time." [R.30, Page ID #: 1489.] CNS's first brief cited deposition testimony from three *Hutzler* plaintiffs (Freshour, Hutzler and Walters) [R.30, Page ID #: 1489], but all the *Hutzler* plaintiffs (i.e., all the ones Plaintiffs cited on Page ID #: 1548) admitted that they were "on the clock" if they put on or removed respirators or anti-contamination equipment (also referred to as "personal protective equipment" or "PPE" in the depositions).[19] Plaintiffs offered no evidence that any of them failed to be paid to put on or take respirators and anti-contamination clothes or similar equipment. While Plaintiffs deny they "donned or doffed *all* required . . . equipment on paid time" this denial fails to cite specific facts required to defeat summary judgment; indeed, the statement necessarily admits that Plaintiffs were paid when they put on some "equipment." [R.40, Page ID #: 1548.]

---

[18] Plaintiffs failed to meet their burden of proving that putting on glasses or earplugs took a majority of their clothes changing time. That is alone dispositive. But to be sure, in an appendix to this reply brief, CNS includes pages from deposition testimony by the two *Hutzler* plaintiffs who said they put on glasses when they changed clothes. Ashburn Dep. 32; Choate Dep. 35. CNS also includes testimony from *Hutzler* plaintiffs about the time it took them to change into work clothes, most of whom said it was around five minutes.

[19] Plaintiffs failed to meet their burden of proof but CNS includes in an appendix the pages from *Hutzler* depositions stating they were paid when putting on equipment: Oody Dep. 42-43; Green Dep. 51-52; Shelton Dep. 75-77, Wright Dep. 51-53; Griffith Dep. 64-66; Hamby Dep. 47-48; McDaniel Dep. 18-19; Ashburn Dep. 64-68; Johnson Dep. 56-58; Pippin Dep. 84-86; Ruth Dep. 44-45; Graham Dep. 59-60; Choate Dep. 48-50; Thompson Dep. 39-41; Cruze Dep. 27, 49; Whitus Dep. 24-25; Poe Dep. 63-67; King Dep. 31-32.

For the first time, Plaintiffs assert that in addition to clothes, there might be "other principal activities" that commenced the continuous workday, but yet again, that assertion is not what they pled in the complaint. [R.40, Page ID #: 1546.] Plaintiffs' assert other principal activities could be "completing security screening before 'clocking in'" or "walking from the change house to clock in", "waiting to clock in" because of security screening delays. The Complaint alleged only that "waiting time and walking time" was "hours worked *after* performing the first principal work activities." [R.22, Page ID #: 769, ¶ 18(b).] The Complaint never asserted that "security screening" or "clocking in" commenced the continuous workday.[20] Plaintiffs may not defeat summary judgment by contradicting the allegations in their complaint. *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005); *George v. City of Winchester*, No. 4:20-CV-26-KAC-SKL, 2023 WL 5805846, at *4 n.5 (E.D. Tenn. Jan. 25, 2023).

The Portal-to-Portal Act precludes "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" from being a principal activity. 29 U.S.C. § 254(a)(1). Plaintiffs' new theories are also meritless because they ignore the Portal-to-Portal Act, *Integrity Staffing,* and Department of Labor regulations which stated that "checking in and out and waiting in line to do so" are not integral or indispensable activities. 574 U.S. at 34-35 (quoting 29 C.F.R. § 790.7(g)). As addressed below, Plaintiffs offered no evidence that the security checks that half of them undergo before or after the shift are integral and indispensable to any of their principal activities. [R.30, Page ID #: 1498, 1500-01.]

[20] Plaintiffs deny that their Complaint "describes the uncompensated activities in only general terms." [R.40, Page ID #: 1546 n. 1.] If so, then, Plaintiffs have no excuse for ignoring the allegations (and lack of allegations) in the Complaint.

For these reasons, there is no genuine dispute of material fact on there being a § 203(o) custom or practice that applied to time spent changing clothes before the shift, and the Court should grant summary judgment in CNS's favor.

### *B. Plaintiffs' tepid defense of* **Franklin** *demonstrates why its § 203(o) holding is not consistent with* **Integrity Staffing** *and* **Sandifer.**

Plaintiffs' Complaint alleged that they should be paid for their "walking time and waiting time" because "the time was hours worked *after performing the first principal work activities to begin the continuous workday*." [R.22, PageID #: 769, ¶ 18(b).] Plaintiffs argue CNS ignores their "walking and waiting claims."[21] To the contrary, Plaintiffs' walking and waiting claim simply turns on whether *Franklin* remains valid. [R.30, PageID #: 1501.]

CNS extensively explained why *Franklin* cannot be reconciled with the Court's reasoning in *Sandifer* and *Integrity Staffing* for the reasons CNS provided in its first brief. [R.30, PageID #: 1501-08.] Plaintiffs largely ignore this discussion. Instead, Plaintiffs emphasize that *Franklin* held "compensability" under § 203(o) is unrelated to whether an activity is a principal activity. [R.40, Page ID #: 1558 (citing 619 F.3d at 619); *see also* 1561.] *Franklin* agreed with district court decisions that reasoned "§ 203(o) only addresses the compensability of the time, *not whether it is integral and indispensable*." 619 F.3d at 619 (emphasis added). Plaintiffs never explain how this can be reconciled with *Sandifer's* holding that § 203(o) "makes clear that the 'clothes' referred to are items that are *integral to job performance*," 571 U.S. at 230, or with *Sandifer's* holding that § 203(o) "provides an exception" even when changing clothes is "integral and indispensable" to principal activities, 571 U.S. at 229. Neither *Franklin* nor Plaintiffs explain how, if § 203(o) does

---

[21] Plaintiffs also conflate their walking claims without addressing CNS's argument that while *Franklin* (if valid) would make walking and waiting time before the shift part of the paid workday, the same is not true for the removal of clothes before the end of the shift and, in fact, the Portal-to-Portal Act precludes counting walking and waiting time after the shift. [R.30, Page ID #: 1499-1501.]

not address or is unrelated to whether clothes changing is a principal activity, § 203(o) could still make clear that it applies to clothes integral to job performance or how § 203(o) provides an exception without addressing integral and indispensable clothes changing. [*See* R.30 Page ID #: 1504.]

Plaintiffs argue *Integrity Staffing* does not refer to Section 203(o). [R.40, Page ID #: 1559.] But Plaintiffs fail to address CNS's argument that *Franklin* cannot be reconciled with *Integrity Staffing's* interpretation of the Portal-to-Portal Act and its definition of integral and indispensable.[22] [R.30, Page ID #: 1505-06.]

Plaintiffs almost admit *Franklin* is contrary to *Sandifer* by arguing *Sandifer* held § 203(o) "cannot apply unless changing clothes is integral and indispensable." If § 203(o) cannot apply unless clothes changing is a principal activity, *Franklin's* holding that the district court must still determine whether clothes changing is a principal activity must be wrong. If Plaintiffs' argument is that a § 203(o) agreement necessarily means all clothes changing is a principal activity, not even *Franklin* went this far. *Franklin* held that even if there was a § 203(o) agreement, the court "must still" determine whether clothes changing was a principal activity before changing would commence the continuous workday.[23] 619 F.3d at 619.

[22] Plaintiffs effectively admit that *Integrity Staffing* overruled *Franklin*'s three-part criteria for determining whether an activity is integral and indispensable. [R.40, PageID #: 1559.]

[23] Plaintiffs argue CNS conceded "*Sandifer* made it clear that § 203(o) applied only when clothes changing was a principal activity." [R.40 PageID #: 1561.] This assertion takes CNS's arguments out of context. *Sandifer* held the FLSA requires compensation for clothes changing "only when the conduct constitutes an integral and indispensable part of the principal activities for which covered workmen are employed." [R.30, Page ID #: 1503-04 citing 571 U.S. at 229 (cleaned up).] CNS argued that under *Sandifer*, § 203(o) controlled even if clothes changing was a principal activity. [*Id*. at 1504.] Plaintiffs admitted this, and *Sandifer's* actual holding controls even if CNS's brief might have oversimplified it in one sentence.

Plaintiffs argue that neither Supreme Court decision expressly overruled *Franklin.* [R.40, Page ID #: 1558]. CNS conceded this but argued *Franklin* cannot be reconciled with the Court's reasoning in *Sandifer* and *Integrity Staffing*. Plaintiffs argue the Court of Appeals for Sixth Circuit has not overruled *Franklin*, *id*., but CNS did not argue the Sixth Circuit has expressly overruled *Franklin* but it did point out that no Sixth Circuit decision has addressed *Franklin's* validity after *Sandifer* and *Integrity Staffing*. [R.30 Page ID #: at 1508.] Plaintiffs argue that district court decisions within the Sixth Circuit are consistent with *Franklin*. [R.40, Page ID #: 1558.] CNS disagrees that the district court decisions Plaintiffs cited are consistent with *Franklin,* but in any event, Plaintiffs cited no decision that specifically addressing the validity of *Franklin*.

Plaintiffs also argue *Sandifer* recognized the "unchanged existence of the continuous workday." [R.40, PageID #: 1558.] CNS did not argue that *Sandifer* modified the continuous workday and Plaintiffs fail to explain why this is material. Plaintiffs argue *Sandifer* did not address post-changing walking time, but they assume that the Supreme Court must expressly overrule *Franklin.* They did not address or refute CNS's argument that the Supreme Court's reasoning can undermine published Sixth Circuit precedent as explained in *Gor v. Holder*, 607 F.3d 180, 188 (6th Cir. 2010).

Plaintiffs assert that *Sandifer* and *Integrity Staffing* "leave untouched *Franklin's* well-reasoned holding," [R.40, PageID #: 1544], but Plaintiffs' glowing assessment of *Franklin* cannot be reconciled with the three court of appeals decisions[24] that have rejected *Franklin*. Plaintiffs failed to address CNS's point that the Tenth Circuit's decision in *Castenada* concluded *Sandifer* supported its holding. [R.30 Page ID #: 1507 (discussing 819 F.3d at 1249)].

---

[24] *Sandifer v. U.S. Steel Corp*., 678 F.3d 590, 596-98 (7th Cir. 2012), *aff'd*, 571 U.S. 220 (2014); *Castenada v. JBS USA, LLC*, 819 F.3d 1237, 1248-49 (10th Cir. 2016); *Adair v. ConAgra Foods, Inc*., 728 F.3d 849, 852 (8th Cir. 2013).

Plaintiffs claim CNS argued "Section 203(o) does not change the nature of an activity." [R.40 PageID #: 1561.] To the contrary, CNS's point was that *Figas v. Horsehead Corp., No. 06-1344, 2008 WL 4170043, *20 (W.D. Pa. 2008),* which *Franklin* (and Plaintiffs) relied upon, erroneously concluded that if it were to hold that clothes changing did not commence the continuous workday that would mean that § 203(o) changes a principal activity to a "preliminary" activity. [R.30, PageID #: 1504.] Plaintiffs do not explain how *Figas* squares with *Sandifer's* holding that § 203(o) applies even if clothes changing is a principal activity. In short, *Franklin* relied upon *Figas,* which conflicts with *Sandifer*.

Plaintiffs avoid addressing CNS's argument that *Franklin* destroys the predictability that § 203(o) promotes. [R.30 Page ID #: 1506.] Instead, Plaintiffs argue § 203(o) says "nothing about negotiating payment for walking or waiting time, only 'changing clothes or washing at the beginning or end of each workday[.]'" [R.40 PageID #: 1561.] To the contrary, *Sandifer* held the "object of § 203(o)" was to "promote the predictability achieved through" negotiation over clothes changing time. *Sandifer*, 571 U.S. at 232. *Franklin*, which did not address predictability, focused on whether *excluded* clothes changing time was nevertheless a principal activity. *Franklin,* 619 F.3d at 619. Both decisions focused on clothes changing time. Plaintiffs now want to change the focus to "negotiating payment for walking and waiting time." Plaintiffs never answer CNS's argument that *Franklin* requires employers to litigate over the very activity (clothes changing) that the Supreme Court held § 203(o) was designed to promote predictability. [R.30, Page ID #: 1506.] Plaintiffs make other arguments but those are based on the mistaken assumption that CNS sought summary judgment on whether clothes changing was integral and indispensable.[25]

[25] Plaintiffs assert that CNS has not analyzed "how the continuous workday rule applies to any of 673 Plaintiffs in this case with respect to walking and waiting times." [R.40, Page ID #: 1545.] CNS stated it was not asking the Court to rule on this issue. [R.30, Page ID #: 1501 n. 13.]

Plaintiffs incorrectly assert that CNS's request for this Court to certify the issue for interlocutory review was perfunctory. [R.40 Page ID #: 1562.] Plaintiffs do not contest that there could be "substantial ground for difference of opinion" but argue an appeal would not advance the litigation. Their argument presumes the Court will deny summary judgment on all their claims and on the custom or practice question. *Id*. They cited Judge Collier's decision in *Strobl v. Croft*, No. 1:24-CV-140, 2025 WL 1106067 (E.D. Tenn. Apr. 14, 2025), to deny interlocutory appeal on whether there was personal jurisdiction requiring "serious scrutiny of the facts" and precedent. *Id.*at *1. *Strobl* is not analogous to the instant situation, which presents a purely legal question asking whether the Supreme Court has overruled *Franklin*.

Thus, if the Court finds that CNS is entitled to summary judgment on the Plaintiffs FLSA claims but does not conclude *Franklin* has been overruled, then certifying the issue for interlocutory appeal to the Court of Appeals for the Sixth Circuit will advance the sole remaining issue. Certifying could even result in avoiding unnecessarily resolving whether clothes changing was integral and indispensable to a principal activity for each one of the over 670 Plaintiffs, only to then have this dispositive legal question presented on appeal.

### ***C. Plaintiffs presented no evidence that CNS had not paid them to change clothes before the shift ended.***

The CBA between CNS and the ATLC states that CNS will "maintain its present practice of allowing employees a reasonable amount of time to wash up and change clothes." [R.28-2, Mee Dec. ¶ 4, Ex. B, Page ID #: 1127.] CNS argued that it "is undisputed that Plaintiffs and other hourly employees are permitted to shower and change clothes before the end of the employee's shift." [R.30 Page ID #: 1492, 1495]. Plaintiffs did not dispute the above facts or present any evidence that CNS had failed to pay any Plaintiff for time spent changing clothes *before* the end of shift. [See R.40, Page ID #: 1550-51.] Instead, Plaintiffs argue that CNS has not proven that it paid

Plaintiffs and mistakenly argued that CNS cannot simply assert that Plaintiffs lack evidence to support their position. [R.40, Page ID #: 1566.] Plaintiffs bear the "burden of proving that he performed work for which he was not properly compensated." *Anderson*, 328 U.S. at 686-87; *Parker*, 95 F.4th at 1018. Under settled summary judgment principles, CNS can argue Plaintiffs must "put up or shut up" by asserting that they have no proof that CNS failed to pay them for changing clothes before the end of the shift. *Street*, 886 F.2d at 1478.

CNS provided payroll records to Plaintiffs months ago, yet Plaintiffs failed to provide the Court with any payroll record or other records that show they were not paid to change clothes before the end of the shift. If any of the over 670 Plaintiffs had not been paid as required by the CBA, Plaintiffs should have been able to submit at least one sworn statement or declaration attesting to this. *Lujan*, 497 U.S. at 888-89. Plaintiffs did not.

Plaintiffs mistakenly argue that the CBA "may have generally discussed post-shift doffing," but that the CBA might apply to "changing time before and/*or after* a shift." [R.40 1550-51 emphasis added.] They make no attempt to reconcile how, when the CBA says employees will be given a "reasonable amount of time to wash up and change clothes" before the end of the shift that could be rationally interpreted to mean clothes changing occurs "after a shift." [R.28-2, Mee Dec. Ex A, PageID #: 1127-28.] CNS and the ATLC have "consistently interpreted" the CBA provision to apply to the end of the shift. [R.40-41, PageID #: 2863.] As Labor Relations Manager Chad Mee explained, this provision has "uniformly been interpreted to apply to changing clothes and washing up before the end of the shift." [R.28-2, Mee Dec. ¶ 4, PageID #: 1102-03.] Plaintiffs admitted the ATLC has pursued grievances on behalf of employees who claimed they were not given a reasonable amount of paid time to change clothes. [R.40, Page ID #: 1551 (discussing

Grievance PMY-185-P); *see also* R.28-2, Mee Dec. ¶ 13, Page ID #: 1105 (explaining grievances making similar allegations are not uncommon).]

Plaintiffs cannot defeat summary judgment by arguing the parties have misinterpreted the CBA for decades. "Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning." Restatement (Second) of Contracts, § 201(1); *see also Russell v. Citigroup, Inc.*, 748 F.3d 677, 681 (6th Cir. 2014) (citing Restatement and holding the parties "common understanding fixes the meaning of the contract").

No CBA would include a provision requiring employees be given a "reasonable amount of time" to do an activity if the employer had not agreed to pay for the time spent engaging in activity. The undisputed facts establish that CNS paid employees to change before the end of the shift. Plaintiffs failed to offer any facts to the contrary. CNS is entitled to summary judgment on Plaintiffs' claim for "post-shift" clothes changing.

### *D. Plaintiffs miscast CNS's arbitration argument.*

Plaintiffs miscast CNS's argument as if CNS had asserted that all their FLSA claims had to be arbitrated. [R.40, Page ID #: 1567.] Instead, CNS argued that the express § 203(o) agreement precluded any FLSA claim for end of shift clothes changing time and if any Plaintiff asserted CNS did not give them a reasonable amount of time to change clothes before the shift ended, § 203(o) required that issue be resolved under the CBA. Plaintiffs did address the first issue and misstated CNS's argument on the second point. In any event, Plaintiffs failed to present any evidence that any Plaintiff was not given enough time to change clothes before the end of the shift and without that, whether that must be arbitrated is moot.

## III. Plaintiffs conceded or forfeited other FLSA claims.

Plaintiffs' response either conceded, did not address or addressed several of CNS's arguments in only a perfunctory manner. The result is the same regardless. *Boerste v. Ellis Towing,*

*LLC*, 607 F. Supp. 3d 721, 736 (W.D. Ky. 2022) ("courts treat claims as forfeited at summary judgment when they're addressed "in a 'perfunctory manner,' without 'some effort at developed argumentation.'" *ultimately quoting McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *accord Hamp v. Bradley County*, No. 1:24-CV-355, 2026 WL 2137413, at *6 (E.D. Tenn. July 24, 2026) (granting summary judgment where nonmoving party offered "very little, if anything" in responding to City's summary judgment argument).

### ***A. Plaintiffs made no attempt to develop any argument that the FLSA requires them to be paid to go through "security screenings" before or after the shift.***

Plaintiffs did not refute CNS's argument that under *Integrity Staffing*, they must prove security screenings were integral and indispensable to a principal activity. [R.30, PageID #: 1497-1051.] Plaintiffs made no effort to do so. Instead, Plaintiffs argue that *Integrity Staffing* does not "automatically mean" security screenings are not integral and indispensable and cited a district court Rule 12(b)(6) decision addressing "donning and doffing protective gear to keep food sanitary," not security screenings. [R.40, PageID #: 1565-66 (citing *Duncan-Watts v. Nestle USA, Inc.*, No. 1:19-cv-01437, 2020 WL 589042, at *4 (N.D. Ohio Feb. 5, 2020)).] Plaintiffs then argued that "donning and doffing protective clothing is integral and indispensable to working at a nuclear weapons facility." *Id*. This argument alone fails to prove CNS employed them to undergo security screenings.

### ***B. Plaintiffs failed to establish the FLSA required CNS pay them for "walking and waiting time" after the shift.***

Plaintiffs conflated their walking and waiting claims. To Plaintiffs, there is no difference in their walking and waiting claims before the shift and their walking and waiting claim after the shift. [E.g., R.40 Page ID #: 1545.] Plaintiffs' complaint alleged they were not paid for "walking and waiting . . . after the designated quitting time." [R.22, Page ID #: 771.] Plaintiffs brief, however, made no effort to support this with admissible facts so their claim has been forfeited.

Instead, Plaintiffs argue that "walking back to the changing house could also be part of employees' workday.'" [R.40 Page ID #: 1546.] CNS proved that Plaintiffs were paid to change clothes before the end of the shift. It necessarily follows that "walking back to the changing house," where Plaintiffs change clothes must have also been paid. None of the *Hutzler* deposition testimony Plaintiffs cited said they were not paid to walk to the change house at the end of the shift. [*See* R. 40, Page ID #: 1546]. Plaintiffs have the burden of proving they were not paid and they failed to do so. *Anderson*, 328 U.S. at 686-87; *Parker*, 95 F.4th at 1018.

***C. Plaintiffs do not dispute that if there is a custom or practice, they are not entitled to be paid for clothes changing time before the shift.***

CNS argued even if *Franklin* was valid it means that Plaintiffs are not entitled to compensation for the time spent changing clothes before the shift. [R.30 Page ID #: 1494]. *Franklin* stated "time spent donning and doffing . . . is excluded from 'hours worked' under § 203(o)." 619 F.3d at 618. Plaintiffs begrudgingly acknowledge that *even if such an activity [clothes changing] is not compensable under 203(o)*, it may be a principal activity for the purpose of the continuous workday. [R. 40 Page ID #: 1561 (citing 619 F.3d at 620)]. Thus, CNS is entitled to summary judgment on Plaintiffs' claim that they should be paid for time spent changing clothes even if it is a principal activity.

***D. Plaintiffs offered no argument or evidence regarding their claim for overtime based on substantial hazards or miscellaneous activities.***

Plaintiffs failed to respond to CNS's argument that the FLSA does not require payment of overtime compensation because Plaintiffs "engage[d] in principal work activities that expose Plaintiffs to substantial hazards. . . ." [R.30, Page ID #: 1509.] When a "litigant fails to address a claim in response to a motion for summary judgment, as well as in their briefing on appeal, we deem that claim abandoned." *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th

Cir. 2021); *Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023). Plaintiffs made no effort to defend their "miscellaneous activities" claim. Plaintiffs have forfeited the claim.

## IV. Conclusion

For the above reasons, CNS is entitled to summary judgment on all the Plaintiffs' claims. *See* Fed. R. Civ. P. 56. Alternatively, should the Court not grant summary judgment on the Plaintiffs' post-changing "waiting time and walking time" before the shift, CNS submits that the Court should certify the continuing validity of *Franklin* for interlocutory appeal to the Court of Appeals for the Sixth Circuit. *See* 28 U.S.C. § 1292(b).

Respectfully submitted this 3rd day of September 2026.

John C. Burgin Jr. (BPR #13731)
John E. Winters (BPR #16345)
Kramer Rayson LLP
P.O. Box 629
Knoxville, TN 37901-0629
(865) 525-5134
jcburgin@kramer-rayson.com
jwinters@kramer-rayson.com

and

Leah Walker McClanahan (BPR #027603)
Consolidated Nuclear Security, LLC
P.O. Box 2009
Oak Ridge, TN 37831-2009
(865) 574.3036
Leah.McClanahan@y12nsc.doe.gov